IN RE the MARRIAGE OF: Stephen P. PROSSER, Petitioner-Respondent,

v.

Gretchen E. COOK, Respondent-Appellant.

Court of Appeals

*No. 93–2901. Submitted on briefs April 13, 1994.—Decided June 1, 1994.*

(Also reported in 519 N.W.2d 649.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Michael L. Stoker,* of *Johns & Flaherty, S.C.* of La Crosse.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Ramona A. Gonzalez,* of *Bosshard & Associates* of La Crosse.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Gretchen Cook appeals a judgment of divorce. Specifically, Cook argues that the trial court

erred in its determination of the amount of child support, the amount and duration of maintenance and property division.

Cook contends that the trial court misapplied WIS. ADM. CODE § HSS 80 and § 767.25(1m), STATS., in calculating child support. While we do not adopt Cook's argument, we agree that the trial court misapplied the law in determining child support, and accordingly reverse that portion of the judgment.

Cook also argues that the trial court ignored the statutory factors in § 767.26, STATS., in determining the amount and duration of maintenance, as well as the criteria set out in § 767.255 in determining property division. Because we conclude that the trial court did not erroneously exercise its discretion, we affirm.

## CHILD SUPPORT

Cook and Stephen Prosser were married in June 1984; Cook was thirty-one and Prosser was almost thirty-six years of age. Their eight-year marriage produced two children who were eight and five at the time of the divorce. Before the final divorce hearing, the parents agreed to shared custody with equal physical placement of the children—the children being placed with each parent seven out of every fourteen days.

Prosser's total annual income was $46,740, and his monthly income was $3,895. Cook's total annual income was $10,356 and her monthly income was $863.

` Originally, the trial court designated Cook as the "primary custodian" of the children for child support purposes under § HSS 80.02(19),[1] and Prosser as the

---

[1] WIS. ADM. CODE § HSS 80.02(19) states: " 'Primary custodian' means the parent having physical custody of the child more than 182 days a year or the parent designated by the court

"shared-time payer" under § HSS 80.02(22).[2] Consequently, the trial court originally calculated the child support under § HSS 80.04(2): "DETERMINING THE CHILD SUPPORT OBLIGATION OF A SHARED-TIME PAYER." Under the shared-time payer formula, the trial court determined Prosser's monthly child support obligation to be $779.02.

At the post-divorce motion hearing, the trial court unilaterally stated it had mistakenly applied the shared-time payer calculation to these facts, i.e., where physical placement was equal. The trial court then proceeded to recalculate the child support. First, under § HSS 80.03(1)(b), it determined the base amount to be 25% of each parent's annual income and calculated the difference to determine the original amount Prosser would owe. Then, to account for the equal placement, the trial court divided that difference in half to account for the time the children are already placed with Prosser and arrived at a figure of $379 to be paid by Prosser each month.[3]

---

as primary custodian when the parents share the child-caring responsibility equally."

[2] WIS. ADM. CODE § HSS 80.02(22) states: " 'Shared-time payer' means a payer who is not the primary custodian but who provides overnight child care beyond the threshold and assumes all variable child care costs in proportion to the number of days he or she cares for the child under the shared-time agreement."

[3] The calculation made by the trial court was as follows:

(1)   25% of each parent's monthly income

    (a)   Prosser - $3,895 × .25 = $ 973.75

    (b)   Cook   - $ 863 × .25 = $ 215.75

(2)   The difference between the obligations:

    ($973.75 - $215.75 = $758)

(3)   Divide the difference in half to account for that half of the time when the children are placed with Prosser:

Cook argues that the trial court misapplied the law when it failed to apply the formula established in § HSS 80.04(2) for determining the child support obligation of a shared-time payer. Without citing any authority, Cook asserts that when the Wisconsin Administrative Code provides such a standard, the trial court is bound to adhere to that standard. We disagree. The determination of child support is committed to the sound discretion of the trial court. *Stephen L.N. v. Karla L.H.*, 178 Wis. 2d 466, 471, 504 N.W.2d 422, 424 (Ct. App. 1993). Accordingly, whether the trial court uses this formula is a discretionary decision.

However, whether or not the trial court uses the formula, it must make its child support determination based on an accurate understanding of the law. A trial court erroneously exercises its discretion if its decision embodies a misapplication or erroneous view of the law. *State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968). In making its determination, the trial court attempted to give Prosser "credit" for the 50% of the time that the children will be placed with him. However, in doing so, the trial court did not take into consideration that the income percentages set out in § HSS 80.03 assume that the child or children are physically placed with the paying parent 30% of the year.

Although not obvious from reading § HSS 80.02, that the percentages set out in that section assume the paying parent has physical placement of the child for 30% of the year is revealed by examining chapter § HSS 80 as a whole. Section 80.02(25) states that

758/2 = $379.

"threshold" means "30% of a year or 109.5 out of every 365 days." In § HSS 80.04(2), to determine the child support obligation for a shared-time payer the court (1) determines the payer's base under 80.03(1); (2) multiplies that percentage by the payer's annual income to establish an original annual level of support; (3) divides that by 365 to determine the payer's original daily support; (4) determines the number of days a year above the threshold and less than 183 that the payer will care for the child overnight; and (5) multiplies the number of days above the threshold by the payer's original daily support level to determine the amount by which the payer's annual support obligation is to be reduced.

In other words, the shared-time payer formula starts with the § HSS 80.03 percentage base, and then reduces the support obligation only for the time the child is placed with the paying parent that exceeds 109.5 days. Accordingly, the percentage base in § HSS 80.03 assumes that the child is placed with the paying parent for 109.5 days.

Therefore, by reducing Prosser's support obligation by 50%, to reflect the 50% of the time the children will be placed with him, the trial court overlooked the fact that 30% of the time the children will be with Prosser is already accounted for in the percentage bases in § HSS 80.03. Thereby, the trial court reduced Prosser's obligation more than necessary to achieve its stated purpose. [4] Accordingly, we reverse that portion of the judgment regarding child support and remand

---

[4] Because 3/10 of the time the children will be placed with Prosser is already accounted for, if the trial court would decide to reduce the obligation to reflect the additional time the chil-

752

for further proceedings. Because we reverse the trial court decision based on its misapplication of § HSS 80.03, we need not address Cook's other arguments concerning this issue.

## MAINTENANCE

Cook next contends that the trial court erroneously found that the marriage had no impact on Cook's employment and erroneously exercised its discretion in awarding inadequate maintenance. The amount of maintenance to be awarded in a given case is committed to the trial court's discretion. *Fowler v. Fowler*, 158 Wis. 2d 508, 519, 463 N.W.2d 370, 374 (Ct. App. 1990) A court exercises discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion. *McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). Therefore we must look to the record to determine whether the trial court "undert[ook] a reasonable inquiry and examination of the facts" and "the record shows that there is a reasonable basis for . . . the . . . court's determination." *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982) (citation omitted). "Because the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions." *Schneller v. St. Mary's Hosp. Med. Ctr.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

---

dren were with Prosser, it should only be reduced by an additional 2/10, or 1/5 (3/10 + 2/10 = 5/10, or 1/2—i.e., 50%).

The trial court applied the facts here to each statutory criteria set out in § 767.26, STATS.,[5] to arrive at a reasonable maintenance determination. The trial court granted limited-term maintenance in order to help Cook reenter the job market. *See Lundberg v. Lundberg*, 107 Wis. 2d 1, 13, 318 N.W.2d 918, 923-24 (1982) (maintenance should be awarded for the employment

---

[5] Section 767.26, STATS., provides that the trial court is to consider:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.255.

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant.

rehabilitation of the spouse who has been absent from the job market during the course of the marriage). The court decided the amount of maintenance, and to limit the term of maintenance, after considering that this was a mid-life marriage that lasted a relatively short period of time. Based on these facts, the trial court found that the impact the marriage had on Cook's level of education or earning capacity called for a limited term of maintenance of $300 per month for twenty-four months. The trial court's finding was not clearly erroneous, § 805.17(2), STATS., and the resulting maintenance determination was based on a consideration of all the facts in light of the statutory criteria set out in § 767.26, and thereby was a proper exercise of the trial court's discretion.

## PROPERTY DIVISION

The property division rests with the sound discretion of the trial court. *Brandt v. Brandt*, 145 Wis. 2d 394, 406, 427 N.W.2d 126, 130 (Ct. App. 1988). The division awarded by the trial court will be sustained if the court examined the relevant facts, applied a proper standard of law and, using a demonstrable rational process, reached a conclusion that a reasonable judge could reach. *Liddle v. Liddle*, 140 Wis. 2d 132, 136, 410 N.W.2d 196, 198 (Ct. App. 1987).

In making the property division determination, the trial court recognized that there was a presumption of equal division, but determined that the presumption of equal division should be altered because of the relatively short length of the marriage and the fact that Prosser brought substantially all of the property into the marriage. By doing so, the trial court applied the

relevant facts to the proper standard of law, *see* § 767.255, STATS.,[6] and through this rational process came to a conclusion that a reasonable judge could reach. *Liddle*, 140 Wis. 2d at 136, 410 N.W.2d at 198.

Cook argues that the trial court erroneously found that the marital residence was substantially improved prior to the marriage and that Cook contributed little to the increase in value of the assets. The court's finding of fact will not be set aside unless it is clearly erroneous. Section 805.17(2), STATS. Because the trial court based its findings on the testimony of Prosser and his witnesses and assertions on Prosser's proposed property division, that substantial renovations were made to the marital residence before the marriage and very little improvements were made after, the finding is not clearly erroneous.

Accordingly, we affirm the property division determination as well as its maintenance determination. We reverse the trial court's child support determination and remand for proceedings consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings. No costs on appeal.

---

[6] Section 767.255, STATS., provides that the trial court may alter an equal division of property after considering: "(1) The length of the marriage" and "(2) The property brought to the marriage by each party."