IN RE the MARRIAGE OF:

Jan RAZ, Petitioner-Appellant,†

v.

Mary BROWN, D.D.S., Respondent-Respondent.

Court of Appeals

*No. 96–1997. Submitted on briefs August 7, 1997.—Decided September 16, 1997.*

(Also reported in 570 N.W.2d 605.)

†Petition to review denied.

■■■■■■■■■

■■■■■■■■■

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Jan Raz* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Randolph E. House* of *Randolph E. House Law Offices* of Milwaukee.

Before Fine, Schudson and Curley, JJ.

CURLEY, J.   Jan Raz appeals from a post-judgment order modifying his child support obligation to $1800 per month. Raz claims the trial court erroneously exercised its discretion in calculating his child support obligation by applying the child support percentage standards. Further, he claims the trial court erred in calculating his monthly income. Under current statutory and case law, the trial court was obligated to determine child support by applying the child support percentage standards unless Raz could demonstrate that their use was unfair to the children or himself. The trial court appropriately exercised its discretion in determining that Raz had not met his burden of proof. The trial court also properly exercised its discretion in adopting the expert witness's testimony as to Raz's actual income. We affirm.

## I.  BACKGROUND.

Raz and Mary A. Brown were married in 1979 and divorced on December 12, 1991. At the time of the divorce, Raz and Brown entered into a marital settlement agreement which gave them joint custody of their two children with Brown having primary placement of the children. The stipulation also required Raz to pay

$2100 per month in child support. At the time of the divorce, Raz's monthly income was $9688 and Brown's was $2674. Both Raz and Brown had other income from investments.

In April 1995, Raz brought motions seeking, *inter alia*, to modify his child support obligation due to a claimed substantial change of circumstances. After a contested hearing in front of the court commissioner, Raz was ordered to pay $1500 a month in child support. Both Raz and Brown appealed this order to the circuit court. After a contested hearing, the trial court found Brown's yearly income was $114,516, and adopted Brown's expert witness's opinion that Raz's actual yearly income was $108,384. The trial court, using the WIS. ADM. CODE § HSS 80 child support standard and the shared time payer formula, then ordered Raz to pay child support of $1800 per month.[1] Raz now appeals.

---

[1] WISCONSIN ADM. CODE § HSS 80.04(2) provides:

(2) DETERMINING THE CHILD SUPPORT OBLIGATION OF A SHARED-TIME PAYER. The child support obligation in cases where both parents provide overnight child care beyond the threshold may be determined as follows:

(a) Determine the number of overnights, or the equivalent as determined by the court in accordance with s. HSS 80.02 (25), each parent has the child per year. If the parent with less time has the child at least 110 overnights but not more than 146 overnights, follow the procedure in par. (b). If each parent has the child for at least 147 overnights but for not more than 218 overnights, follow the procedure in par. (c).

(b) In cases where the parent with less time has the child for at least 110 overnights, or the equivalent as determined by the court in accordance with s. HSS 80.02 (25), per year but not more than 146 per year, determine the child support as follows:

1. Determine the child support obligation under s. HSS 80.03 (1) of the parent with less time;

2. Divide by 365 the number of overnights the parent with less time has physical placement of the child to determine the

## II. ANALYSIS.

### A. Standard of Review.

■

The determination of appropriate child support is committed to the sound discretion of the trial court. *Weidner v. W.G.N.*, 131 Wis. 2d 301, 315, 388 N.W.2d 615, 622 (1986); *Prosser v. Cook*, 185 Wis. 2d 745, 751, 519 N.W.2d 649, 651 (Ct. App. 1994). Whether the trial court properly exercised its discretion is a question of law. *Seep v. State Personnel Comm'n*, 140 Wis. 2d 32, 38, 409 N.W.2d 142, 144 (Ct. App. 1987). "An appellate court will sustain a discretionary act if it finds that the trial court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *State v. Gudenschwager*, 191 Wis. 2d 431, 440, 529 N.W.2d 225, 229 (1995).

■

A trial court, in setting child support, is statutorily obligated to use the percentage standards set by the Department of Health and Social Services.[2] *See* § 767.25(1j), STATS. ("Except as provided in sub. (1m), the court shall determine child support payments by using the percentage standard established by the department under s. 49.22(9)."). This legislative direc-

---

percentage of the year that the parent with less time provides overnight care;

3. If the percentage under subd. 2 is over 30% but not more than 40%, reduce the child support obligation under subd. 1 in accordance with Table 80.04(2)(b).

[2] The Department of Health and Social Services was renamed the Department of Health and Family Services, effective July 1, 1996, pursuant to 1995 Wis. Act 27, §§ 9126 (19) and 9426 (16).

tive has been affirmed several times by the appellate courts. *See Grohmann v. Grohmann*, 189 Wis. 2d 532, 536, 525 N.W.2d 261, 262 (1995), and *Kjelstrup v. Kjelstrup*, 181 Wis. 2d 973, 975, 512 N.W.2d 264, 265 (Ct. App. 1994).

The percentage standards which the Department of Health and Social Services established are set out in Chapter HSS 80 of the Wisconsin Administrative Code. The percentage standards currently require child support for two children to be set at twenty-five percent of the payer's base or adjusted base.[3]

■

A trial court may only depart from the percentage standards "if, after considering the factors listed in s. 767.25 (1m) . . . the court finds, by the greater weight of the credible evidence, that the use of the percentage standard is unfair to the child or to any of the parties." *Kjelstrup*, 181 Wis. 2d at 975, 512 N.W.2d at 265; *see also* § 767.25(1m), STATS. The factors courts may consider when contemplating a deviation from the percentage standard are found at § 767.25(1m), STATS.[4]

---

[3] WISCONSIN ADM. CODE § HSS 80.03(1)(b) provides:

**(1)** DETERMINING CHILD SUPPORT USING THE PERCENTAGE STANDARD. The payer's base shall be determined by adding together the payer's gross income available for child support under sub. (2), if appropriate, and the payer's imputed income for child support and dividing by 12. . . . The percentage of the payer's base or adjusted base that constitutes the child support obligation shall be:

. . . .

(b)  25% for 2 children.

[4] Section 767.25(1m), STATS., provides:

**(1m)** Upon request by a party, the court may modify the amount of child support payments determined under sub. (1j) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties:

■ Our supreme court recently reaffirmed the presumptive use of the child support percentage standards in high-income cases. *See Luciani v. Montemurro-Luciani,* 199 Wis. 2d 280, 544 N.W.2d 561 (1996). In *Luciani,* the payer's income was substantially less than the payee's income, but the court concluded that that fact alone was insufficient to show unfairness under § 767.25(1m), STATS. The court explained:

(a) The financial resources of the child.

(b) The financial resources of both parents as determined under s. 767.255.

(bj) Maintenance received by either party.

(bp) The needs of each party in order to support himself or herself at a level equal to or greater than that established under 42 USC 9902(2).

(bz) The needs of any person, other than the child, whom either party is legally obligated to support.

(c) The standard of living the child would have enjoyed had the marriage not ended in annulment, divorce or legal separation.

(d) The desirability that the custodian remain in the home as a full-time parent.

(e) The cost of day care if the custodian works outside the home, or the value of custodial services performed by the custodian if the custodian remains in the home.

(ej) The award of substantial periods of physical placement to both parents.

(em) Extraordinary travel expenses incurred in exercising the right to periods of physical placement under s. 767.24.

(f) The physical mental and emotional health needs of the child, including any costs for health insurance as provided for under sub. (4m).

(g) The child's educational needs.

(h) The tax consequences to each party.

(hm) The best interests of the child.

(hs) The earning capacity of each parent, based on each parent's education, training and work experience and the availability of work in or near the parent's community.

(i) Any other factors which the court in each case determines are relevant.

The obligation to support one's children is a basic one. Luciani's contention that he should be relieved of this burden simply because his ex-wife earns a substantially higher income runs contrary to the paramount goal of child support, namely, securing the best interests of the children. We recognize the role that income disparity may play in a particular case, but under the facts before us, it is only relevant where Luciani can demonstrate that he is unable to pay the court ordered child support or that such disparity in income will adversely affect the children or himself.

*Id.* at 309, 544 N.W.2d at 572 (citation omitted). The court also restated that the party requesting the modification under the percentage standards bears the burden of proof before the trial court. *Id.* at 295–96, 544 N.W.2d at 567.

## B. Analysis.

The trial court found that Raz failed to meet his burden to show that it would be unfair to apply the percentage standards in his case. Raz claims that the trial court's finding was an erroneous exercise of discretion. Raz does not claim that the trial court failed to examine the relevant facts, and most of the time, he does not seem to claim the trial court applied an improper standard of law. Rather, Raz appears to claim that the trial court, after applying the facts to the law, reached a conclusion that no reasonable judge could make. We disagree.

■ The trial court's oral decision contains a thoughtful and thorough recitation of the facts and the law. The court found that, after paying child support, Raz had $4250 of disposable income, while Brown had

$8253. The trial court realized that this was a significant discrepancy, but addressed the issue, stating:

> Dr. Brown's budget, her income is substantially more than Mr. Raz's income. The spread between what he needs and what he's actually ending up with after taxes and paying child support—and Mr. Raz makes some very valid arguments about how the numbers aren't fair . . . [B]ut the Supreme Court said the numbers alone aren't enough, and what's been presented here are numbers. I have nothing in the record that shows that it is unfair to the children in any way by applying the standards.

The court then noted that there was no evidence to show the children were harmed because Brown had more disposable income than Raz. The court also found that Raz failed to show he would be unable to live at the same standard of living he was used to. After going through all of the factors listed at § 767.25(1m), STATS., the court concluded that Raz "had not met his burden of proof in establishing that use of the standards would be unfair to him or his children." We agree.

Raz has failed to meet the difficult burden of showing that no reasonable judge could have reached the same conclusion as the trial court. The *Luciani* case is instructive. While Raz must pay twenty percent of his income in child support, the payer in *Luciani* was required to pay twenty-four percent of his income. This was true even though, as in Raz's case, the payer in *Luciani* was required to spend far more of his disposable income on child support than the payee. Also, the percentage standards were not found to be "unfair" in *Luciani*, even though the payer's income plus maintenance was one-third of the payee's income.

To escape *Luciani's* holding, Raz needed to do more than point out the disparity in disposable incomes which the child support percentage standards produced. According to *Luciani*, income disparity is only relevant if payers can show they are unable to pay the court-ordered child support or that the income disparity will adversely affect the children or themselves. *Luciani*, 199 Wis. 2d at 309, 544 N.W.2d at 572. Raz attempts to make this showing with several arguments. First, Raz claims that the income disparity contributes to strife between himself and Brown, thereby harming the children and himself. Second, Raz claims that, because he has less discretionary income than Brown to spend on the children, the children are harmed by living at a lower standard of living when in his care.

The stated intent of the child support percentage standard provisions is to insure that children are not adversely affected by divorce. Equalizing lifestyles between divorced parents is not one of the objectives of the provisions. The amount of discretionary income which either parent may have available to spend on their children is also a secondary consideration. What is paramount is that both parents pay a fair amount for their children's essential care.

We note that following divorce, many children find themselves living in homes where their parents have different standards of living. Some differences in standards of living are self-imposed, while others are economically imposed. Reducing a child support payment in order to equalize standards of living between parents is no guarantee that strife will subside, nor is a reduction often in the children's best interests. Therefore, the trial court properly exercised its discretion when it found that "[t]here is no evidence in this record

which indicates any harm to the children because Mother has more disposable income."

We further note that much of Raz's argument attacks the actual percentage standards, rather than the court's application of those standards to the facts of this case. Indeed, Raz requests at one point that this court "correct the flaws of the present rule so as to spare other families the damage which this family has experienced." This argument is better addressed to the legislature.

Raz additionally argues that the application of the percentage standards violates his right to equal protection of the laws under the United States and Wisconsin Constitutions. Raz also includes two new arguments in his reply brief. The equal protection and the reply brief arguments were never raised in the trial court. Therefore, we decline to address these arguments. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980) ("[I]ssues not raised or considered in the trial court will not be considered for the first time on appeal.").

Finally, Raz argues that the trial court incorrectly determined his income by accepting the testimony of Brown's expert witness.[5] Essentially, Raz argues that a repayment of a loan is not income. He offers no support for this assertion. Brown argues that weighing the credibility of a witness is a function for the trier of fact, and that the trial court properly accepted her expert witness's testimony. We agree. *Lellman v. Mott*, 204 Wis. 2d 166, 173, 554 N.W.2d 525, 528 (Ct. App. 1996),

[5] Raz's objection is rendered somewhat disingenuous by his later desire to abandon this argument if the appellate court would set child support at $600 per month.

instructs: "[T]he test to be applied by the appellate court must, of necessity, involve a determination whether the trial court's finding of fact could reasonably be made based upon the available information." (citing *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981)). The trial court's reliance on an accountant, who opined that corporate repayment of a loan to Raz was a proper addition to Raz's income available for child support, is a factual finding which is reasonably supported by the record. Additionally, the definition of "gross income" found in WIS. ADM. CODE § HSS 80 includes voluntary deferred compensation. Raz's decision to give the company he owns[6] a loan which the company subsequently repaid falls within this definition.

Last, we address Brown's request that fees and costs be assessed against Raz pursuant to § 809.25(3), STATS., the frivolous appeal statute. Brown argues that Raz knew or should have known that his appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law. We decline to assess costs against Raz. Although the similarities between the facts of this case and the facts of *Luciani* are striking, they differ in one respect; in this case, both parties had high incomes. Additionally, although he did not succeed, Raz attempted to show, as *Luciani* admonished, that his children would be harmed by the income disparity. These are significant distinctions.

*By the Court.*—Order affirmed.

---

[6] Raz owns 94% of the stock.