In re the Marriage of:

## Kathryn Jalas Franke, Petitioner-Respondent-Cross-Appellant,

v.

## Martin T. Franke, Respondent-Appellant-Cross-Respondent.

Supreme Court

*No. 01–3316. Oral argument September 16, 2003.—
Decided February 6, 2004.*

(On certification from the court of appeals.)

### 2004 WI 8

(Also reported in 674 N.W.2d 832.)

362

For the respondent-appellant-cross-respondent there were briefs (in the court of appeals) by *David E. Jarvis* and *Quarles & Brady LLP,* Milwaukee, and oral argument by *David E. Jarvis.*

For the petitioner-respondent-cross-appellant there was a brief by *Colleen Wentworth Jones, Rod W. Rogahn* and *Rogahn Law Offices,* Delafield, and oral argument by *Colleen Wentworth Jones.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This case comes before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2001–2002).[1] The circuit court for Washington County, Leo F. Schlaefer and Patrick J. Faragher, Judges, entered orders opening the divorce judgment under Wis. Stat. § 806.07 and modifying provisions of the divorce judgment relating to property division and child support. The circuit court awarded an increase in the amount Mr. Franke was to contribute toward Ms. Franke's attorney fees, but not as much as Ms. Franke wanted. The circuit court refused to change the provision in the divorce judgment setting each party's share of the 1995 income tax liability.[2]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2001–2002 version unless otherwise indicated.

[2] Judge Schlaefer issued orders opening the divorce judgment on July 27 and July 30, 2000. Upon his retirement, the case was assigned to Judge Faragher. Judge Faragher generally disagreed with Judge Schlaefer's conclusions of law. The order dated September 11, 2001, (Judge Faragher) stated (1) that Wis. Stat. § 806.07 may not be used to review a final and binding

¶ 2. Four issues of law are presented:

(1) May a circuit court open the property division provisions of a divorce judgment under Wis. Stat. § 806.07 even though the divorce judgment incorporated an arbitral award that had been confirmed by the circuit court?

(2) Assuming that a circuit court may relieve a party from property division provisions of such a divorce judgment under Wis. Stat. § 806.07, did the circuit court erroneously exercise its discretion in opening this judgment?

(3) When Wis. Stat. § 806.07 is used to relieve a party from property division provisions of such a divorce judgment, is the relevant date of valuation of assets the date of the closing of the arbitration record or the date of the divorce?

(4) If a circuit court may relieve a party from property division provisions of such a judgment, did the circuit court erroneously exercise its discretion in modifying the judgment to increase Ms. Franke's share of the property division, to increase the Mr. Franke's child support payments, and to increase Mr. Franke's contribution toward his former wife's attorney fees incurred after the divorce judgment; in refusing to modify

arbitration award; (2) that final and binding arbitration is a "special circumstance" exception to the general rule that property is valued as of the date of the divorce; (3) that the circuit court will not rule on prior attorney fees or award additional attorney fees to either party; and (4) that the parties must submit any other issues for consideration to the court. Although Judge Faragher's conclusions of law were at odds with Judge Schlaefer's earlier rulings, Judge Faragher declined to review Judge Schlaefer's prior orders. Mr. Franke appealed and Ms. Franke cross-appealed.

the allocation of the 1995 income tax liability; and in refusing to require Mr. Franke to contribute additional sums toward his former wife's attorney fees incurred after the divorce judgment?

¶ 3. We answer the questions posed as follows:

(1) A circuit court may relieve a party from property division provisions of a divorce judgment under Wis. Stat. § 806.07 even though the divorce judgment incorporates a confirmed arbitral award.

(2) The circuit court did not erroneously exercise its discretion under § 806.07 in opening the property division provisions of the divorce judgment.

(3) Arbitration may constitute, but does not as a matter of law constitute, a special exception requiring property to be valued as of the date of the closing of the arbitration record instead of the date of divorce.

(4) The circuit court did not erroneously exercise its discretion in modifying the divorce judgment to increase Ms. Franke's share of the property division and Mr. Franke's contribution toward his former wife's attorney fees incurred after the divorce judgment. The circuit court did not erroneously exercise its discretion in refusing to modify the divorce judgment to reallocate the 1995 income tax liability between the parties. The circuit court (Judge Faragher) did not erroneously exercise its discretion in refusing to require Mr. Franke to contribute additional sums toward his former wife's postjudgment attorney fees. The circuit court erroneously exercised its discretion in increasing Mr. Franke's child support payments.

¶ 4. Accordingly, we affirm the orders of the circuit court revising the divorce judgment to increase Ms. Franke's share of the property division and Mr. Franke's contribution toward his former wife's post-judgment attorney fees. The orders of the circuit court refusing to award Ms. Franke additional postjudgment attorney fees and refusing to modify the allocation of the 1995 income tax liability are also affirmed. The circuit court's order modifying child support is reversed and remanded to the circuit court for further consideration not inconsistent with this opinion.

I

¶ 5. This divorce proceeding occupied the attention of the courts and an arbitrator for several years. We set forth an abbreviated version of those facts relevant to deciding the issues presented. Additional facts appear later in the opinion.

¶ 6. The Frankes married on December 29, 1989. Less than four years later, on July 26, 1993, Ms. Franke filed a petition for divorce. During the divorce proceedings the circuit court ordered the parties to mediate their disputes, but these efforts were unsuccessful and broke down in October of 1994.

¶ 7. From 1994 to 1996, various attempts to complete the proceedings were made, culminating in the parties' decision in April 1996 to agree to have all disputes in their divorce resolved by binding arbitration.

¶ 8. Between July and October of 1996, the parties participated in several arbitration hearings. After the last hearing in October 1996, the arbitrator requested additional documents, the homestead was being sold, and various "housekeeping details" needed

attention. In the summer of 1997 Mr. Franke filed an updated financial disclosure statement with the arbitrator that ostensibly reflected the value of his assets as of October 1996. Mr. Franke's work involved the buying, selling, and consolidation of communication assets, making financial calculations particularly complex.

¶ 9. The arbitrator issued a final award on April 16, 1998. On June 9, 1998, on Ms. Franke's motion, the circuit court confirmed the arbitrator's award and ordered that a divorce judgment be entered in conformity with the award. In accordance with the confirmation order, the arbitral award was incorporated by reference into the final judgment of divorce filed and dated July 13, 1998 and made the judgment of the court. The arbitral award determined property division, child support, each party's liability for 1995 income taxes, and the sum Mr. Franke was to contribute toward Ms. Franke's attorney fees incurred during the divorce proceedings.

¶ 10. Just over nine months later, on April 15, 1999, Mr. Franke filed a motion seeking to hold Ms. Franke in contempt for failing to sign and return the parties' joint income tax return as required by the arbitral award and judgment. On May 26, 1999, Ms. Franke responded with a motion to open the June 9, 1998 divorce judgment pursuant to Wis. Stat. §§ 806.07(1)(a), (b), (c), and (h), and 767.32 (relating to modification of child support), alleging, in part, that Mr. Franke had failed to disclose certain assets and provided erroneous valuations of other assets. Ms. Franke requested that the circuit court revise portions of the divorce judgment relating to property division and child support to reflect what she asserted was the true value of the assets. She also requested that the circuit court

reconsider her share of income tax liability for 1995 and award her additional attorney fees.

¶ 11. The circuit court opened the divorce judgment and, after hearings, entered a decision and order dated July 27, 2000. The order increased Mr. Franke's child support payments from $2,300 to $3,000 per month and increased by $5,000 Mr. Franke's payment toward his former wife's attorney fees incurred after the divorce judgment.

¶ 12. The order refused to modify each party's share of the 1995 income tax liability.

¶ 13. The order increased Ms. Franke's share of the property, requiring Mr. Franke to pay Ms. Franke $25,000 as a one-half share of a $50,000 loan Mr. Franke made to All City Communication Company, Inc., and an additional $28,457.22 as her share of Mr. Franke's revalued interest in the stock of All City.

¶ 14. Further, on the basis of the circuit court's conclusion that Mr. Franke had not been forthcoming about his various assets, the circuit court ordered additional discovery of Mr. Franke's financial records covering the period of time between the close of the arbitration record and the entry of the divorce judgment.

¶ 15. After Judge Schlaefer's retirement, the circuit court issued an order stating that the relevant valuation date of the Frankes' property was the close of the arbitration record, that it would not award Ms. Franke additional attorney fees for postjudgment proceedings, and that it would not revisit any of the earlier orders of the circuit court.

¶ 16. The parties appealed and cross-appealed, and the court of appeals certified the case to this court.

## II

¶ 17. The first question presented is whether a circuit court may open the property division provisions of a divorce judgment under Wis. Stat. § 806.07 when the divorce judgment incorporated a confirmed arbitral award.[3]

¶ 18. To answer this question, we must examine the interplay among the following:

A. Wis. Stat. § 806.07, governing opening judgments;

B. Wis. Stat. § (Rule) 802.12(3)(c), governing binding arbitration in certain family law actions, along with chapter 788 governing arbitration; and

C. Wis. Stat. § 767.255(3)(L), imposing responsibilities on a circuit court in determining property division in a divorce judgment.

## A

██

¶ 19. Wisconsin Stat. § 806.07 allows a circuit court, on motion, to relieve a party from a judgment, order, or stipulation upon such terms as are just and for one of the eight reasons enumerated in § 806.07.[4]

¶ 20. The purpose of Wis. Stat. § 806.07 is to "achieve a balance between fairness in the resolution of disputes and the policy favoring the finality of judg-

---

[3] Interpretation of rules and statutes presents questions of law that we determine independently of the circuit court but benefiting from its analysis.

[4] Wisconsin Stat. § 806.07(1) was adopted by court rule and provides as follows:

806.07 Relief from judgment or order. (1) On motion and upon such terms as are just, the court . . . may relieve a party . . . from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

ments. The statute enhances fairness in the administration of justice by authorizing a circuit court to vacate judgments on various equitable grounds."[5]

¶ 21. Section 806.07 applies to all civil actions and special proceedings, including family actions, unless contrary rules are to be found.[6] Section 806.07 has often been applied in family actions, and the courts have upheld the authority of circuit courts to use § 806.07 to open a divorce judgment upon such terms as are just. The court has stated that "a family court has authority to modify a property division under sec. 806.07, Stats. Although a property division in a divorce is not subject to the court's continuing jurisdiction and may not be modified based on a change of circum-

---

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

[5] *Edland v. Wis. Physicians Serv. Ins. Corp.,* 210 Wis. 2d 638, 644, 563 N.W.2d 519 (1997) (citation omitted).

[6] Wis. Stat. § 801.01(2).

stances under sec. 767.32(1), Stats., sec. 806.07 gives the court discretionary authority to grant relief from the judgment."[7]

¶ 22. The court has not, however, been faced with the issue of using Wis. Stat. § 806.07 to open a divorce judgment incorporating a confirmed arbitral award.

¶ 23. Mr. Franke argues, in effect, that our cases applying Wis. Stat. § 806.07 to divorce judgments are not applicable here to open a property division of a divorce judgment incorporating a confirmed arbitral award. He correctly contends that the general rule is that courts are more limited in the scope of review of the substance of arbitral awards than in the scope of review of the substance of judgments not based on arbitral awards.

¶ 24. A court will, with some exceptions, confirm an arbitral award regardless of whether the award is correct or incorrect as a matter of fact or law because public policy favors arbitration as promoting the efficient resolution of disputes, and as giving the parties what they bargained for, that is, an arbitrator's, not a

---

[7] *Spankowski v. Spankowski,* 172 Wis. 2d 285, 290, 493 N.W.2d 737 (1992) (citing *Thorpe v. Thorpe,* 123 Wis. 2d 424, 426, 367 N.W.2d 233 (1985)).

*See also Tozer v. Tozer,* 121 Wis. 2d 187, 189, 358 N.W.2d 537, 539 (1984) (recognizing the power of a court to use § 806.07 to open a divorce judgment as to property division while noting that a reviewing court will reverse a circuit court's refusal to do so only for abuse of discretion); *Conrad v. Conrad,* 92 Wis. 2d 407, 413, 284 N.W.2d 674 (1979) (noting that when a stipulation failed to address certain property in wife's name, circuit court's refusal to open judgment under § 806.07 constituted erroneous exercise of discretion).

court's decision. Our cases and secondary authority support the principle that judicial review of an arbitral award is narrow.[8]

¶ 25. Mr. Franke asserts that these policies girding arbitration would be ill-served by allowing an attack under § 806.07 on a judgment of divorce incorporating a confirmed arbitral award. In other words, his argument is that § 806.07 conflicts with and must give way to ch. 788 and § (Rule) 802.12(3)(c). We note, however, that to some extent, Wis. Stat. §§ 806.07, 788.10, and 788.11 respectively set forth similar criteria for opening a judgment and vacating or modifying an arbitral award.

¶ 26. In contrast, Ms. Franke relies on Wis. Stat. § 788.14, which provides that a judgment incorporating an arbitral award has "the same force and effect, in all

---

[8] As this court expounded in *Joint School District No. 10 v. Jefferson Educational Association,* 78 Wis. 2d 94, 116–18, 253 N.W.2d 536 (1977):

> The court will not relitigate issues submitted to arbitration. The parties contracted for the arbitrator's decision, not the court's.
>
> . . . .
>
> . . . The decision of an arbitrator cannot be interfered with for mere errors of judgment as to law or fact. Courts will overturn an arbitrator's award if there is a perverse misconstruction or if there is positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy.

*See also Lutkowski v. Dankert,* 178 Wis. 2d 110, 113, 503 N.W.2d 15 (Ct. App. 1993). Secondary authority supports the proposition that the scope of judicial review of an arbitration award "is among the narrowest known to the law." Laird E. Lawrence & Christopher R. Ward, *The Availability and Scope of Arbitration Awards under the Federal, Uniform, and State Acts,* 29 The Brief 32, 32 (2000).

respects, as, and [is] subject to all provisions of law relating to, a judgment in an action" and argues that a judgment confirming an arbitral award is subject to § 806.07.[9]

¶ 27. We need not address the broader issue that the parties dispute, namely whether Wis. Stat. § 806.07 applies to all judgments incorporating a confirmed arbitral award.[10] We need address only whether § 806.07 applies to the property division provisions of a

---

[9] While the parties rely on the statutes, not on the terms of the arbitration agreement, to buttress their arguments, the arbitration agreement could arguably be interpreted to allow the parties to seek relief from a judgment confirming the arbitral award under Wis. Stat. § 806.07. The arbitration agreement states that an arbitration award "shall not be modified or re-litigated in the circuit court except as provided in Secs. 788.10 and 788.12 [sic], or as required by Rule 802.12(3)(e) Stats." This provision does not come into play in the present case because we are dealing with the judgment, not the award. The arbitration agreement goes on to address a circuit court's power over the judgment confirming an award, stating: "However, after an order confirming the award is entered in the circuit court as a judgment pursuant to Sec. 788.09, and 802.12 Stats., *the parties expressly agree that the circuit court has continuing jurisdiction of the matter,* and either party may bring a motion to modify the judgment in the circuit court pursuant to Sec. 767.32 [relating to support] and Sec. 767.325 [relating to legal custody and physical placement]." (emphasis added). The words emphasized are superfluous unless they mean something other than that the circuit court may modify the judgment relating to support, legal custody, and physical placement. The dissent relies heavily on the very existence of the terms of the arbitration agreement but reads the emphasized words out of the agreement. *See* Justice Prosser's dissent, ¶ 100.

[10] Our research indicates that very few courts have addressed the question of under what conditions may a judgment confirming an arbitral award may be opened.

divorce judgment incorporating a confirmed arbitral award. We are guided in this task by examining first Wis. Stat. § (Rule) 802.12(3)(c) and then Wis. Stat. § 767.255(3)(L).

Courts have concluded that Federal Rule of Civil Procedure 60(b), the analogue of Wis. Stat. § 806.07, can be used to open a judgment that confirms an arbitral award. In *Baltia Air Lines, Inc. v. Transaction Management, Inc.,* 98 F.3d 640, 642 (D.C. Cir. 1996), the court concluded that "[a]lthough Rule 60(b) is an appropriate vehicle by which to challenge a judgment confirming an arbitration award, Baltia has not met the standards for relief under the rule." The Seventh Circuit has implicitly authorized the use of Rule 60(b) to modify judgments confirming arbitral awards. *See Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 682–83 (7th Cir. 1983) (failing to provide relief from the judgment without suggesting that Rule 60(b) was not available). In *Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.,* 183 F.R.D. 112, 117–18 (S.D.N.Y. 1998), Judge Robert Sweet concluded that Rule 60(b) may be used to modify the judgment of a circuit court's confirmation of an arbitral award, relying on the federal analogue to Wis. Stat. § 788.14(3), which provides that a judgment entered in conformity with an arbitral award has the "same force and effect, in all respects, as and be subject to all the provisions of law relating to, a judgment in an action."

In contrast, Federal Rule of Civil Procedure 60(b) has been viewed as not being available to modify an arbitral *award,* as distinguished from a *judgment* confirming an arbitral award. *See, e.g., Washington-Baltimore Newspaper Guild v. Washington Post Co.,* 442 F.2d 1234, 1238–39 (D.C. Cir. 1971) (neither Rule 60(b) nor any of the other Federal Rules of Civil Procedure was designed to apply to arbitration awards); *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 757 F. Supp. 283, 289–90 (S.D.N.Y. 1991) (courts may not use Rule 60(b) to overturn an arbitration award); *Cook Chocolate Co. v. Salomon Inc.,* 748 F. Supp. 122, 125 (S.D.N.Y. 1990) (Judge Robert Sweet held that Rule 60(b) is unavailable to use to contest an arbitrator's decision).

377

B

¶ 28. This court adopted Wis. Stat. § (Rule) 802.12(3) in 1993.[11] Prior to the adoption of this Rule, no express provisions existed relating to arbitration in actions affecting the family. Rule 802.12(3) provides for binding arbitration as a mechanism to resolve certain familial disputes between a husband and wife.[12] Rule 802.12(3)(c) governs a circuit court's confirmation of an arbitral award addressing adult financial issues and incorporating an award into a divorce judgment. The Rule limits a court's powers to confirm an arbitral award and incorporate it into a divorce judgment. A court's powers are subject to Wis. Stat. §§ 788.10 and 788.11. Rule 802.12(3)(c) reads as follows:

> 802.12(3)(c). If the parties agree to binding arbitration, the court *shall, subject to ss. 788.10 and 788.11,* confirm

---

[11] Prior to the adoption of this rule, parties had the option of using arbitration in family disputes as a means of arriving at an agreement. *See* Record of Supreme Court Public Hearing 93–13, Letter from Attorney Leonard Loeb to the Supreme Court (Oct. 28, 1993):

> Arbitration may well already be available in Wisconsin under the existing common law, but the Bar and the litigants in the family law area are simply unaccustomed to considering it. A statute/judicial determination that clearly identifies arbitration as an available alternative, and describes the process for its use, would be of great help to the public and the Bar.

*Id.* at 1–2.

[12] In this section, we address only that part of Wis. Stat. § (Rule) 802.12(3)(c) governing property division. We discuss the application of § (Rule) 802.13(3)(c) to attorney fees and allocation of income tax liability and the application of § (Rule) 802.12(3)(d) and (e) to arbitration of children's issues later in the opinion.

the arbitrator's award and incorporate the award into the judgment or postjudgment modification order with respect to all of the following:

1. Property division under s. 767.255.

2. Maintenance under s. 767.26.

3. Attorney fees under s. 767.262.

4. Postjudgment orders modifying maintenance under s. 767.32.

*Id.* (emphasis added).

¶ 29. Wisconsin Stat. § 788.10 requires a circuit court to vacate an award when an award was procured by corruption, fraud, or undue means; when there is evident partiality, corruption, misconduct, or misbehavior of an arbitrator; or when an arbitrator exceeded or imperfectly executed his or her powers.[13]

¶ 30. Wisconsin Stat. § 788.11 requires a circuit court to modify an award when, generally speaking,

---

[13] Wisconsin Stat. § 788.10 provides as follows:

(1) . . . [T]he court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

379

there was an evident material miscalculation or mistake or when arbitrators have awarded upon a matter not submitted to them.[14]

¶ 31. Mr. Franke argues that Wis. Stat. §§ 788.10 and 788.11 are the sole means for challenging a judgment incorporating a confirmed arbitral award. The text of these provisions speaks to a circuit court's vacating, modifying, and confirming an arbitral award prior to a judgment. In the present case, the circuit court has already confirmed the arbitral award and incorporated it into the divorce judgment.[15] The final divorce judgment does not incorporate the agreement to arbitrate; the judgment incorporates the arbitration award. Sections 788.10 and 788.11 are therefore not, on their face, determinative of this case.

---

[14] Wisconsin Stat. § 788.11 provides:

(1) . . . [T]he court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

[15] The arbitration agreement provides that when an order confirming the award is entered the parties could seek appellate review and upon such an appeal the appellate court would not be limited to the grounds set forth in Wis. Stat. §§ 788.10 and 788.11. The parties did not seek appellate review of the order confirming the award, and this provision of the arbitration agreement is not relevant to this case.

¶ 32. Nevertheless, inferences may be drawn from Wis. Stat. §§ 788.10 and 788.11's limitations on a circuit court's powers to vacate and modify an arbitral award before confirmation and judgment. A reasonable inference is that a circuit court is not, upon entry of a divorce judgment, suddenly freed from the limitations of §§ 788.10 and 788.11 to change a divorce judgment incorporating a confirmed arbitral award on property division and treat such a divorce judgment just like any other divorce judgment. Judge Faragher expressed this view as follows: "To permit one of the parties to binding arbitration, to relitigate an issue after the hearing would violate the arbitration agreement of the parties, but would also be inconsistent with procedures found in sec. 788.10 . . . regarding vacation of an arbitration award and would make meaningless sec. 788.13 . . . providing that notice of motion to vacate, modify or correct an award must be served upon the adverse party within three months after the award is filed or delivered."

¶ 33. We therefore examine Wis. Stat. § 767.255(3)(L), governing a circuit court's responsibility in dividing property, for guidance in determining whether a circuit court has authority to open, under Wis. Stat. § 806.07, property division provisions in a divorce judgment incorporating a confirmed arbitral award regardless of the limitations expressed in § 802.12(3)(c).

## C

¶ 34. Wisconsin Stat. § 767.255 requires that a circuit court divide property[16] and authorizes a circuit court to deviate from an equal division of property after considering the applicable statutory factors set forth in Wis. Stat. § 767.255(3).[17]

¶ 35. One of the factors a circuit court considers in deviating from an equal division of property is the terms of an agreement between the parties. Wisconsin Stat. § 767.255(3)(L)[18] provides that an agreement between the parties is binding and creates a presumption that the agreement is equitable as to both parties. The provision contains a critical caveat, however, in that no agreement between the parties regarding a property division shall be binding upon the court when the terms of the agreement are inequitable as to either party.[19]

---

[16] *See* Wis. Stat. § 767.255(1).

[17] *LeMere v. LeMere,* 2003 WI 67, ¶ 25, 262 Wis. 2d 426, 663 N.W.2d 789.

> The arbitrator in the present case divided all known property and explicitly stated that he considered the applicable factors set forth in Wis. Stat. § 767.255 to determine whether any division other than an equal division should apply.

[18] Section 767.255(3)(L) states in relevant part that:

> (3)(L) . . . [a court may alter an equal division of property after considering] [a]ny written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court *except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party.* The court shall presume any such agreement to be equitable as to both parties.

> *Id.* (emphasis added).

[19] *See also* Wis. Stat. § 767.10 (authorizing parties to an annulment, divorce, or legal separation to stipulate to a division

¶ 36. The legislature intended a circuit court to give effect to the parties' agreement, thus safeguarding the important public policy of freedom to contract. The legislature also expressed, however, a competing public policy found in the common law and then codified in the family law code that promises relating to marriage cannot contravene public policy.[20]

¶ 37. The agreement to marry and the agreement to dissolve a marriage are by their nature private decisions between the parties, but the institution of marriage, as well as the authority to dissolve that institution, are extensively governed by the laws of the state. In contrast with most commercial contracts, society has retained an interest in the substantive terms of contracts relating to marriage and divorce.

> If the marriage contract were no different from a contract to sell an automobile, the parties thereto might well be permitted to bargain away all interests involved, in or out of court. But the State has an interest in the family relations of its citizens vastly different from the interest it has in an ordinary commercial transaction. . . .
>
> . . . .
>
> As a contract, the marriage contract is unique in the law. . . . The parties to a marriage do not compre-

---

of property subject to the approval of the court). In *Van Boxtel v. Van Boxtel*, 2001 WI 40, ¶ 21–28, 242 Wis. 2d 474, 625 N.W.2d 284, the court ruled that separation agreements that are made after separation or in contemplation of separation are governed by § 767.10, not § 767.255(3)(L), and constitute a recommendation jointly made by the parties to the court regarding what the judgment should provide.

[20] 6A *Corbin on Contracts* § 1474 at 610 (1951).

hend between them all the interests that the relation contains. Society sanctions the institution and creates and enforces its benefits and duties.[21]

¶ 38. As regards property division in a divorce, an agreement between the parties must be equitable to protect the parties' partnership status during marriage,[22] as well as their economic welfare after divorce.[23] A court protects the parties' and public interests by reviewing the substantive provisions of any agreement affecting the division of property.[24]

¶ 39. While "the parties [to a divorce] are free to contract, . . . they contract in the shadow of the court's obligation to review the agreement on divorce to protect

[21] *Sherrer v. Sherrer,* 334 U.S. 343, 358–60 (1948) (Frankfurter, J., dissenting). *See also Shiffman v. Askew,* 359 F. Supp. 1225, 1229–31 (M.D. Fla. 1973); American Law Institute, *Principles of the Law of Family Dissolution* § 7.02, Comment c (2002) ( "Enforcement of agreements about the consequences of family dissolution therefore present a different policy question than enforcement of commercial agreements between persons who otherwise have no claims on one another's property or income.").

[22] *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 39, 260 N.W.2d 658 (1978).

[23] *Van Boxtel,* 242 Wis. 2d 474, ¶ 23; *Button v. Button,* 131 Wis. 2d 84, 94, 388 N.W.2d 546 (1986).

[24] *See, e.g., Van Boxtel,* 242 Wis. 2d 474, ¶¶ 20–21; *Rintelman v. Rintelman,* 118 Wis. 2d 587, 599, 348 N.W.2d 498 (1984); *Bergevin v. Bergevin,* 168 Wis. 466, 470, 170 N.W. 820 (1919); *Polakowski v. Polakowski,* 2003 WI App 20, ¶¶ 9–10, 259 Wis. 2d 765, 657 N.W.2d 102; *Patrickus v. Patrickus,* 2000 WI App 255, ¶¶ 10–11, 239 Wis. 2d 340, 620 N.W.2d 205; *Ross v. Ross,* 149 Wis. 2d 713, 718, 439 N.W.2d 639 (Ct. App. 1989).

the spouses' financial interests on divorce."[25] Further, "[w]hen a court follows and adopts an agreement of the parties making it a part of its judgment, the court does so on its own responsibility, and the provisions become its own judgment."[26] It is the terms of the arbitration award, not the terms of the agreement to arbitrate, that a circuit court reviews and may incorporate within its judgment.

¶ 40. Thus a court has under Wis. Stat. § 767.255(3)(L) an important oversight function regarding private agreements made between parties to ensure that the terms are equitable. In contrast, judicial review of arbitral awards and proceedings is, by statute, very limited.

¶ 41. Our decision today merely clarifies that when a circuit court enters a judgment confirming an arbitration award in a property division, the same public policy considerations are implicated as would arise if the parties had stipulated to a particular division of property. The text of Wis. Stat. § 767.255(3)(L) does not differentiate among various types of agreements between the parties. Thus it does not differentiate between an agreement for binding arbitration and any other agreement between the parties. The apparent practice prior to the adoption of Rule 802.12(3)(c) was that when the parties voluntarily entered into arbitration and completed the arbitration proceedings, the

---

[25] *Button,* 131 Wis. 2d at 94 (concluding that a court must review an agreement under precursor to § 767.255(3)(L) for substantive fairness); *Abitz v. Abitz,* 155 Wis. 2d 161, 177, 455 N.W.2d 609 (1990) (noting that the court takes an active role in reviewing divorce stipulations to promote the stability and best interests of the family).

[26] *Miner v. Miner,* 10 Wis. 2d 438, 443, 103 N.W.2d 4 (1960) (decided prior to adoption of § 767.255(3)(L)).

parties reduced the terms of the award to a stipulation. The circuit court then reviewed the stipulation as it did any other stipulation under § 767.255(3)(L).[27]

¶ 42. Implicit in Ms. Franke's argument that Wis. Stat. § 806.07 allows the circuit court to open the property division in the present case, regardless of the existence of binding arbitration, is that Rule 802.12(3)(c) cannot limit a circuit court's power in confirming an arbitral award on property division to consider the equity of such agreements because of Wis. Stat. § 767.255(3)(L). Section 767.255(3)(L) requires a circuit court to divide the property of the parties upon the parties' full disclosure of their finances and provides that no agreement between the parties about property division "shall be binding where the terms of the agreement are inequitable as to either party."

¶ 43. We agree with Ms. Franke that the circuit court's statutory responsibility to review agreements under Wis. Stat. § 767.255(3)(L) does not comfortably mesh with our Rule 802.12(3)(c), which limits the circuit court's responsibilities in reviewing, modifying, and incorporating arbitral awards regarding property division in a divorce judgment.

---

[27] In the Supreme Court hearing on the adoption of Rule 802.12, Attorney Linda Balisle noted that the adoption of the rule would supplant the then-existing practice that the "divorcing parties may arbitrate any or all issues in their divorce. If, upon completion of the arbitration, they reduce the terms to a stipulation, the trial court reviews the stipulation as it does any other and affirms or modifies the stipulation." Record of Wisconsin Supreme Court Public Hearing 93–13, Linda S. Balisle, Remarks Regarding Petition for Alternative Dispute Resolution in Family Law Cases at 1 (on file with the Clerk of the Wisconsin Supreme Court, Madison, WI).

¶ 44. One attorney raised this concern at the hearings on the petition to adopt Rule § 802.12. Counsel urged that the then-existing law be retained, namely that a circuit court retain the obligation to review the fairness of any agreement or stipulation and that appellate courts retain their powers to review a circuit court's judgment on appeal. Such review of the substance of an arbitral award by both a circuit court and the court of appeals is, counsel asserted, necessary for the protection of the parties and the public.[28]

¶ 45. The record of the rule hearing does not reflect the court's discussion of counsel's argument, and the court adopted Rule 802.12(3)(c) as proposed pursu-

---

[28] In the supreme court hearing on the adoption of Rule 802.12, Attorney Linda Balisle argued that circuit court review of an arbitral award would be limited by the adoption of the proposed rule:

> The petition that is before this court would require the trial court to give deference to the arbitrator's award and would limit the trial court's ability to modify or vacate the award consistent with the provisions of Wis. Stat. secs. 788.10 and 788.11. Further, it would limit the Court of Appeals and the Supreme Court's review of these family law cases to the narrow issues of whether the trial court properly applied Secs. 788.10 and 788.11 in affirming or modifying an arbitrator's award.
>
> . . . .
>
> This court's standard of review should not be restricted in family law cases to the application of the provisions of Secs. 788.10 and 788.11 when the arbitrator may have no special expertise in this area of the law, when there is no written record of the proceeding and when the law is still developing in all aspects of domestic relations.

Record of Wisconsin Supreme Court Public Hearing 93–13, Linda S. Balisle, Remarks Regarding Petition for Alternative Dispute Resolution in Family Law Cases at 1–2 (on file with the Clerk of the Supreme Court, Madison, WI).

ant to its rulemaking powers under § 751.12. Section 751.12 authorizes this court, in pertinent part, to adopt rules "regulat[ing] pleading, practice, and procedure in judicial proceedings in all courts," but the rules "shall not abridge, enlarge, or modify the substantive rights of any litigant."[29]

¶ 46. The litigants in this dispute do not challenge Rule 802.12(3)(c) on the ground that it broaches Wis. Stat. § 751.12's divide between substance and procedure.[30] We need not determine whether Rule 802.12(3)(c) merely provides a new, alternative procedure for dividing property or fundamentally changes substantive rights available to parties in a divorce. Suffice it to say that a tension appears to exist between Rule 802.12(3)(c) and Wis. Stat. § 767.255(3)(L), and we should interpret the Rule and the statute in a way that harmonizes the two provisions.

¶ 47. To harmonize the two and effectuate the purposes of both, we conclude that a circuit court must treat a divorce judgment incorporating a confirmed arbitral award on property division in a similar fashion

---

[29] Section 751.12 provides, inter alia, as follows:

751.12 Rules of pleading and practice. (1) The state supreme court shall, by rules ... regulate pleading, practice, and procedure in judicial proceedings in all courts, for the purposes of simplifying the same and of promoting the speedy determination of litigation upon its merits. The rules shall not abridge, enlarge, or modify the substantive rights of any litigant.

[30] In *State v. Holmes,* 106 Wis. 2d 31, 45 n.11, 315 N.W.2d 703 (1982), the Court was made aware of the possibility that use of its rulemaking power could have produced a substantive change in judge substitution requests. Because that question was not before the court in that case, we declined to consider it. *Id.*

to, but not in exactly the same way as, its treatment of other divorce judgments under § 767.255(3)(L) over which the circuit court may exercise its jurisdiction as necessary. Circuit courts must give greater deference to an arbiter's award of a property division under Rule 802.13(3)(c) than they would to other types of agreements between parties.

¶ 48. Several reasons support this conclusion. The state has, as we have stated previously, a long-standing policy favoring arbitration as an alternative method of dispute resolution.[31] The court has encouraged in Wis. Stat. § (Rule) 802.12(3) court-annexed alternative dispute resolution, including binding arbitration, as a supplement to litigation. The arbitrator is a third-party independent decision maker who can decide property division considering the parties' and the public's interests. In contrast, when the parties reach their own agreement, they tend to view property division as a matter of their economic bargain only and not to be motivated by a sense of the public policy underlying divorce law.[32]

¶ 49. This harmonization of Rule 802.12(3)(c), Wis. Stat. § 767.255(3)(L), and Wis. Stat. § 806.07 protects the public's interest in preserving the integrity of arbitration without sacrificing the litigants' and the public's interest in judicial review of property divisions in divorce.

¶ 50. We reiterate the narrow scope of our holding today. We limit our holding to property divisions in divorce judgments incorporating a confirmed arbitral award. We do not determine whether Wis. Stat.

---

[31] *DeBaker v. Shah,* 194 Wis. 2d 104, 111, 533 N.W.2d 464 (1995) (the policy of this state favors arbitration).

[32] *Miner,* 10 Wis. 2d at 442.

§ 806.07 vests power in circuit courts to open all final judgments incorporating arbitral awards. Divorce judgments are different. A circuit court is statutorily required to perform an independent, substantive review of the parties' agreement before incorporating it in the divorce judgment.

¶ 51. In sum, after considering Wis. Stat. § 806.07, § 767.255(3)(L), and Rule 802.12(3)(c), we conclude that a circuit court may properly invoke § 806.07 to open the property division provisions of a divorce judgment incorporating a confirmed arbitral award.

### III

██

¶ 52. Having resolved that a circuit court may use Wis. Stat. § 806.07 to open a judgment incorporating a confirmed arbitral award on the division of property, we turn to the second question, namely whether the circuit court properly exercised its discretion under § 806.07 in the present case to open the divorce judgment.

¶ 53. Ms. Franke asserts that the present case falls within § 806.07(1)(a), (b), (c), and (h), providing that a court may relieve a party from a judgment, order or stipulation for the following reasons: Mistake, inadvertence, surprise, or excusable neglect (§ 806.07(1)(a)); newly discovered evidence entitling a party to a new trial under § 805.15(3) (§ 806.07(1)(b)); fraud, misrepresentation, or other misconduct of an

adverse party (§ 806.07(1)(c)); or any other reasons justifying relief from the operation of the judgment (§ 806.07(1)(h)).[33]

¶ 54. Granting relief under Wis. Stat. § 806.07 is within the discretion of the circuit court.[34] We review a circuit court's exercise of discretion to grant relief from a judgment under § 806.07 for an erroneous exercise of discretion. "[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination."[35] An appellate court will affirm a circuit court's discretionary decision as long as the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."[36] Therefore, the record on appeal must "reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts of the case."[37]

---

[33] Ms. Franke properly filed her motion for relief from judgment within the one-year period prescribed by Wis. Stat. § 806.07(2).

[34] *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985).

[35] *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

[36] *Long v. Long,* 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995). *See also M.L.B.,* 122 Wis. 2d at 541; *Shuput v. Lauer,* 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982).

[37] *State v. Delgado,* 223 Wis. 2d 270, 281, 588 N.W.2d 1 (1999).

¶ 55. The function of this court is not to exercise discretion in the first instance but to review the circuit court's exercise of discretion. The record is clear that the circuit court exercised its discretion, concluding that it should grant Ms. Franke's motion to open the judgment under Wis. Stat. § 806.07(1)(a), (b), (c), and (h), but the circuit court did not explicitly state the subsection upon which it relied or fully explain its rationale. When a circuit court fails to provide an adequate reason for its discretionary decision, this court will uphold the circuit court's determination if upon examination of the record the facts support the circuit court's exercise of discretion.[38]

¶ 56. Ms. Franke contends, and apparently the circuit court agreed, that opening the judgment was appropriate because Mr. Franke failed to make full financial disclosures to the arbitrator, the court, and

---

[38] *Hedtke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 471–72, 326 N.W.2d 727 (1982); *Christensen v. Econ. Fire & Cas. Co.,* 77 Wis. 2d 50, 55–56, 252 N.W.2d 81 (1977).

> A circuit court's decision in the exercise of discretion will not be disturbed by an appellate court unless an abuse of discretion is shown. If the record indicates that the circuit court failed to exercise its discretion, the circuit court has abused its discretion. When a circuit court exercises discretion, the record on appeal must reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts in the case. If this court's review of the record indicates that the circuit court applied the wrong legal standard in the exercise of its discretion or that the facts of record fail to support the circuit court's decision, the circuit court has abused its discretion. An appellate court may engage in its own examination of the record to determine whether the facts provide support for the circuit court's decision.

*State v. DeSantis,* 155 Wis. 2d 774, 777 n.1, 456 N.W.2d 600 (1990).

Ms. Franke. Presumably the circuit court reasoned that this nondisclosure constituted a mistake, misrepresentation, or other misconduct justifying relief under § 806.07.

¶ 57. On this point, the parties do not disagree about the relevant law. Mr. Franke's brief agrees that "if a judgment confirming an arbitration award has been infected by a material failure to disclose assets or liabilities, § 806.07 may permit reopening."[39] His point of contention with opining the divorce judgment is factual. He claims that he disclosed his financial interests to the arbitrator and that the arbitrator considered them in preparing the award.

¶ 58. Mr. Franke's position is not substantiated by the record, which supports the circuit court's finding that a material change in the value of the company in issue should have been, but was not, disclosed to the arbitrator. Further, the record suggests a lack of cooperation on Mr. Franke's part in making his financial status known to his wife, the arbitrator, and the court over the years that this case has been in litigation. The record is sufficient to support the circuit court's ruling that the alleged nondisclosure justified opening the divorce judgment.

¶ 59. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in opening the divorce judgment under § 806.07.

---

[39] Combined Reply Brief and Response Brief of Respondent-Appellant and Cross-Respondent Martin T. Franke at 4.

## IV

¶ 60. The third issue we address is whether the relevant date of valuation of the parties' property is the date of the closing of the arbitration record or the date of the divorce. No case that we are aware of has dealt with the date-of-valuation issue when an arbitration award is disputed.

¶ 61. Wisconsin Stat. § 767.27 governs the disclosure and valuation of assets in a divorce proceeding.[40] Section 767.27(1) requires that parties to a divorce complete forms fully disclosing all assets owned in full or in part by either party. Wisconsin Stat. § 767.27(2) further provides that financial disclosure forms are to

---

[40] Section 767.27(1) provides as follows:

767.27(1) Disclosure of assets required. In any action affecting the family, except an action to affirm marriage under s. 767.02(1)(a), the court shall require each party to furnish, on such standard forms as the court may require, full disclosure of all assets owned in full or in part by either party separately or by the parties jointly. Such disclosure may be made by each party individually or by the parties jointly. Assets required to be disclosed shall include, but shall not be limited to, real estate, savings accounts, stocks and bonds, mortgages and notes, life insurance, interest in a partnership, limited liability company or corporation, tangible personal property, income from employment, future interests whether vested or nonvested, and any other financial interest or source. The court shall also require each party to furnish, on the same standard form, information pertaining to all debts and liabilities of the parties. The form used shall contain a statement in conspicuous print that complete disclosure of assets and debts is required by law and deliberate failure to provide complete disclosure constitutes perjury. The court may on its own initiative and shall at the request of either party require the parties to furnish copies of all state and federal income tax returns filed by them for the past 2 years, and may require copies of such returns for prior years.

be "updated on the record to the date of hearing."[41] The cases have interpreted this statute to mean that the property is usually "valued and divided as of the date of divorce," except where "special circumstances" exist.[42]

¶ 62. The circuit court (Judge Faragher) ruled that binding arbitration, by its very nature, constituted a special circumstance justifying an alternative valuation date as a matter of law. The circuit court also ruled that the language of § 767.27(2) referring to updating the financial disclosure forms at the conclusion of a hearing refers to the close of the arbitration hearing rather than the date on which the circuit court confirms the arbitral award.

¶ 63. We agree with the circuit court to the extent it concluded that an arbitral award regarding property division might very well be a "special circumstance" justifying deviation from valuation as of the date of divorce. As we have stated previously, a circuit court should consider more deferentially, under § 767.255(3)(L), an arbitral award resulting from the

---

[41] The full text of § 767.27(2) provides:

Disclosure forms required under this section shall be filed within 90 days after the service of summons or the filing of a joint petition or at such other time as ordered by the court or circuit court commissioner. Information contained on such forms shall be updated on the record to the date of hearing.

[42] *Schinner v. Schinner,* 143 Wis. 2d 81, 98, 420 N.W.2d 381 (Ct. App. 1988). *See also Sommerfield v. Sommerfield,* 154 Wis. 2d 840, 851, 454 N.W.2d 55 (Ct. App. 1990).

For special circumstances, see, *e.g., Long v. Long,* 196 Wis. 2d 691, 698, 539 N.W.2d 462 (Ct. App. 1995); *Brandt v. Brandt,* 145 Wis. 2d 394, 421–22, 427 N.W.2d 126 (Ct. App. 1988); (holding that "special circumstances" existed where a husband significantly depleted a checking account between the separation and the final divorce and that the separation date was a "meaningful date" for valuing the marital assets).

parties' binding arbitration agreement than other types of agreements between the parties. But it does not follow that a circuit court's heightened deference to an arbitral award requires, as a matter of law, that the closing of the arbitration record must always be the date on which the property is valued.

¶ 64. Although the closing of the arbitration record is a meaningful date and could serve as the date of valuation, we conclude that the closing of the arbitration record does not create a categorical exception under § 767.27(2) to alter the general rule of valuing property at the date of divorce. A circuit court considers what constitutes special circumstances in selecting a valuation date other than the date of divorce on a case-by-case basis.[43]

¶ 65. We conclude that the circuit court incorrectly stated the law in holding that the closing of the arbitration record constitutes a blanket exception to the date-of-divorce rule. We are satisfied that the general rule that property is to be valued at the date of divorce, coupled with the requirement that courts deviate from the general rule when special circumstances so require, provides a workable and flexible standard for circuit courts to apply in cases involving an arbitral award.

¶ 66. We need not determine the appropriate date of valuation in this case, and we need not remand the matter to the circuit court for such a determination

---

[43] For discussions of "special circumstances," see, *e.g.*, *Finley v. Finley*, 2002 WI App 144, ¶ 48, 256 Wis. 2d 508, 648 N.W.2d 536; *Preiss v. Preiss*, 2000 WI App 185, ¶¶ 20–22, 238 Wis. 2d 368, 617 N.W.2d 514; *Long*, 196 Wis. 2d at 698; *Wikel v. Wikel*, 168 Wis. 2d 278, 287, 483 N.W.2d 292 (Ct. App. 1992); *Brandt*, 145 Wis. 2d at 421–22.

because, as we explain below, Ms. Franke apparently is not asking this court to modify the circuit court's revision of the circuit court order increasing her share of the property.

## V

¶ 67. Having resolved these questions of law, we address briefly the fourth issue raised on this appeal: Did the circuit court erroneously exercise its discretion in (A) modifying the judgment to increase the wife's share of the property division; (B) increasing child support payments; (C) increasing Mr. Franke's contribution toward Ms. Franke's attorney fees during the divorce proceedings and not awarding Ms. Franke attorney fees during the postjudgment proceedings; and (D) refusing to modify its allocation between the parties of the 1995 income tax liability?

## A

¶ 68. As to the revision of the property division, Mr. Franke argues that the circuit court erroneously exercised its discretion in valuing the property and in increasing the wife's share of the property division. Mr. Franke's primary argument is that the circuit court erred in concluding that he withheld relevant information from the arbitrator and in assessing the value of certain assets. We are not persuaded by this argument.

¶ 69. We conclude that the record well supports the circuit court's determination that Mr. Franke attempted to shift his assets to evade accurate valuation and refused to provide appropriate documentation to

both the arbitrator and the court.[44] Furthermore, the circuit court reviewed the financial documents provided it and rationally explained why it revised the property division as to All City and the $50,000 loan, consistent with a 50/50 division of the property.

¶ 70. Ms. Franke cross-appealed from the circuit court's (Judge Faragher's) conclusion of law that the date of valuation was the date of the closing of the arbitration record. She wins on this point, but it is not entirely clear whether Ms. Franke is requesting this court to remand the property division to the circuit court for a determination of the value of the properties in issue as of the date of the divorce. From the proceedings as a whole, we conclude that Ms. Franke is not seeking a remand to the circuit court for further proceedings on the property division.

¶ 71. Accordingly, we affirm the order of the circuit court awarding Ms. Franke additional property as part of the property division.

B

¶ 72. Both Mr. and Ms. Franke assert that the circuit court erred when it increased his monthly child

---

[44] Our previous decisions in *Rintelman v. Rintelman,* 118 Wis. 2d 587, 596 348 N.W.2d 498 (1984), and *Nichols v. Nichols,* 162 Wis. 2d 96, 100–101, 469 N.W.2d 619 (1991), support our conclusion that Ms. Franke is not estopped from seeking a change in the property division. The third of the four conditions elucidated in *Rintelman,* namely that the overall settlement be fair, equitable, and not against public policy at the time of the divorce judgment, is not satisfied in this case. The circuit court opened the property division in the divorce judgment, apparently concluding that the arbitration award was not fair and equitable.

support payments by $700 per month.[45] We review a circuit court order regarding child support for an erroneous exercise of discretion.[46]

¶ 73. Wisconsin Stat. § 767.32(1) provides that modification of a child support order may be made only if there has been a substantial change in circumstances affecting the parties. Mr. Franke contends that no substantial change in circumstances occurred that would justify an increase in child support. Ms. Franke responds that the circuit court did not sufficiently increase the child support payments.

---

[45] The parties do not dispute that the circuit court has the power to open a divorce judgment incorporating a confirmed arbitral award on child support. See Wis. Stat. §§ 767.32, (Rule) 802.12(3)(d), (e) (treating awards relating to children differently from Rule 802.12(3)(c) regarding adult financial matters). Judicial Council Note, 1993, § (Rule) 802.12, Stats., comments as follows:

> Subsection (3) sets forth several special considerations for family actions. Even when the parties consent to binding arbitration, the court retains the responsibility of ensuring that the arbitration award in custody, placement, visitation and support matters conforms to the applicable law. The court is not bound to confirm the arbitrator's award. Rather, it must review the arbitrator's decision in light of the best interest of the child. If following this review the court finds that the arbitration process and its outcome satisfy the requirements of all applicable statutes, the court may adopt the decision as its own.

The arbitration agreement also provided that the parties may seek to modify the divorce judgment pursuant to § 767.32.

[46] "The division of marital property and the calculation of child support are matters generally left to the sound discretion of the circuit court. That discretion, however, must be exercised by applying correct legal standards." Cook v. Cook, 208 Wis. 2d 166, 171, 560 N.W.2d 246 (1997) (citations omitted); see also LeMere v. LeMere, 2003 WI 67, 262 Wis. 2d 426, 663 N.W.2d 789.

¶ 74. We first address Mr. Franke's claim that a substantial change in circumstances did not occur between the termination of arbitration and the circuit court's order to modify support.

¶ 75. Section 767.32(1)(b) lists four circumstances that raise a rebuttable presumption of a substantial change in circumstances, one of which occurs if the moving party can demonstrate "[a] difference between the amount of child support ordered by the court to be paid by the payer and the amount that the payer would have been required to pay based on the percentage standard established by the department . . . ." Wis. Stat. § 767.32(1)(b)4.

¶ 76. The circuit court found that a substantial change in circumstances occurred in this case because new information the circuit court obtained suggested Mr. Franke's income to be significantly higher than he originally reported and because a wide disparity existed between the parties' incomes. The record supports the circuit court's assessment that the additional information, coupled with the apparent disparity between the income levels of the parties, constituted a substantial change in circumstances.[47] Accordingly the circuit court did not erroneously exercise its discretion in modifying child support upward.

---

[47] *Luciani v. Montemurro-Luciani,* 199 Wis. 2d 280, 309, 544 N.W.2d 561 (1996) (income disparity plays a role in determining whether a substantial change has occurred, but is not sufficient in itself); *Raz v. Brown,* 213 Wis. 2d 296, 305, 570 N.W.2d 605 (Ct. App. 1997) (although numbers themselves are not enough, disparity in discretionary income speaks to unfair division of amounts necessary for child care).

¶ 77. We now turn to Ms. Franke's contention that the circuit court erred in not awarding her a larger child support payment. We begin by noting that child support payments are determined by the circuit court in accordance with Wis. Stat. § 767.25. Subsection (1j) of § 767.25 provides that, except as provided in subsection (1m), the court is to use the percentage of income standard established by the Department of Workforce Development (DWD).[48] Deviation from this percentage standard is appropriate when a circuit court finds that the use of the percentage standard is unfair to the child or any of the parties.[49]

¶ 78. The circuit court found that Mr. Franke earned $348,798.00 in 1999, although Mr. Franke disputes this figure. According to the DWD calculations, the percentage standard for two children is 25%.[50] Twenty-five percent of $348,798, divided by 12, amounts to child support of $7,266.62 monthly.

¶ 79. Ms. Franke argues that inasmuch as the circuit court found that Mr. Franke had income of $348,798 in 1999, the circuit court should have required

---

[48] Pursuant to Wis. Stat. § 49.22(9), the DWD adopted the percentage standard of the payor's income to be used to determine child support. *See* Wis. Admin. Code § DWD 40.03(1) (Dec. 2003).

[49] Wis. Stat. § 767.25(1m).

[50] The Administrative Code provides:

[T]he payer's base shall be determined by adding together the payer's gross income available for child support under sub. (2), if appropriate, and the payer's imputed income for child support and dividing by 12. . . . The percentage of the payer's base or adjusted base that constitutes the child support obligation shall be: (a) 17% for one child; (b) 25% for 2 children . . . .

Wis. Admin. Code § DWD 40.03(1) (Jan. 2003).

Mr. Franke to pay $7,266.62 each month under the percentage standard. Instead, the circuit court increased the monthly payments from $2,300 per month to only $3,000 each month.

¶ 80. As noted, § 767.25(1m) allows a court to depart from the percentage standard when its use would be unfair to the children or the parties. When a circuit court order departs from the percentage standard, however, Wis. Stat. § 767.25(1n) requires that the circuit court "state in writing or on the record the amount of support that would be required by using the percentage standard, the amount by which the court's order deviates from that amount, its reasons for finding that use of the percentage standard is unfair to the child or the party, its reasons for the amount of the modification and the basis for the modification."

¶ 81. Although the circuit court exercised its discretion in setting child support, the circuit court failed to articulate, as Wis. Stat. § 767.25(1n) requires, any reasons why it deviated from the 25% standard and why it increased the child support by only $700. The record does not contain sufficient facts for us to conclude why the circuit court deviated from the percentage standard, and we therefore conclude that the circuit court erroneously exercised its discretion in setting child support.[51]

¶ 82. Ms. Franke requests this court to increase her child support award to $7,266.62 per month pursu-

---

[51] *See Richmond v. Richmond,* 2002 WI App 25, ¶ 12–13, 250 Wis. 2d 647, 640 N.W.2d 220 (circuit court's decision to modify child support payments was reversed and remanded because the record did not show that the circuit court considered the factors set forth in § 767.25(1m), or state its basis for adjusting payments and its reasons for the amount of modification).

ant to the percentage standard. We decline to do so. Determining child support and deviation from the percentage standard is a task better handled by the circuit court. We therefore reverse the circuit court's order increasing child support and remand the issue to the circuit court.

C

¶ 83. The parties disagree whether the circuit court erroneously exercised its discretion regarding Mr. Franke's contribution to payment of Ms. Franke's post-judgment attorney fees.[52] The circuit court (Judge Schlaefer) increased Mr. Franke's contribution toward Ms. Franke's attorney fees incurred before the divorce judgment. Mr. Franke contends that the circuit court (Judge Schlaefer) erroneously exercised its discretion in awarding attorney fees. At a later hearing, the circuit court (Judge Faragher) refused to require Mr. Franke to contribute additional funds toward Ms. Franke's post-judgment attorney fees. Ms. Franke argues that the circuit court erroneously exercised its discretion in not awarding her additional attorney fees.

 

¶ 84. We review a circuit court's decision regarding attorney fees for an erroneous exercise of discretion.[53] We conclude that the circuit court did not erroneously exercise its discretion in awarding or refus-

---

[52] Because all disputed attorney fees in this case arose after the divorce judgment, judicial review is governed by Wis. Stat. § 767.262(2) and not Rule 802.12(3)(c)(3).

[53] Attorney fees rest primarily in the discretion of the circuit court. *Martin v. Martin,* 46 Wis. 2d 218, 221, 174 N.W.2d 468 (1970).

ing to award additional attorney fees. A circuit court may consider a variety of factors, including the financial resources of the parties, additional fees incurred, and the opposing party's refusal to provide information promptly to avoid unnecessary delays.[54]

¶ 85. The increase in Mr. Franke's contribution toward Ms. Franke's attorney fees was justified given the evidence of Mr. Franke's elusive behavior in disclosing financial information during the arbitration proceedings. Although the circuit court (Judge Faragher) did not explain its refusal to award Ms. Franke additional attorney fees beyond that which had already been awarded by Judge Schlaefer, the record supports this exercise of discretion. Judge Faragher apparently recognized that Judge Schlaefer had already taken into account Mr. Franke's dilatory behavior in setting attorney fees. As such Judge Faragher did not erroneously exercise his discretion by refusing to increase further Mr. Franke's contribution toward Ms. Franke's attorney fees.

### D

¶ 86. Ms. Franke's final claim is that the circuit court erroneously exercised its discretion in refusing to open the judgment requiring her to incur tax liability for the year 1995.[55] After carefully considering the arbitral award, the circuit court concluded that Ms.

---

[54] *Modrow v. Modrow,* 2001 WI App 200, 247 Wis. 2d 889, 903–04, 634 N.W.2d 852.

[55] We treat the income tax liability as a debt to be considered in the property division. Accordingly, as we explained previously, the circuit court has authority to open the divorce judgment and determine the income tax liability.

Franke was making the same arguments to the court that she had to the arbitrator and that the arbitrator's consideration of the merits of the issue did not warrant the circuit court's revisiting the issue. On the basis of this record, we conclude that the circuit court did not erroneously exercise its discretion in refusing to change the arbiter's award regarding allocation of liability for 1995 income taxes.

¶ 87. For the reasons set forth, we affirm the orders of the circuit court revising the judgment to increase Ms. Franke's share of the property division and Mr. Franke's contribution toward the Ms. Franke's attorney fees incurred after the divorce. The orders of the circuit court refusing to award Ms. Franke additional attorney fees and refusing to modify the allocation of the 1995 income tax liability are also affirmed. The circuit court's orders modifying child support are reversed and remanded to the circuit court for further consideration not inconsistent with this opinion.

*By the Court.*—The orders of the circuit court are affirmed in part and reversed and remanded in part.

¶ 88. JON P. WILCOX, J. (*dissenting*). I join in the dissent of Justice Prosser, but write separately because of the majority's failure to determine the date upon which parties are required to update their financial information. Majority op., ¶¶ 65–66. The majority states that the presence of an arbitral award may sometimes constitute a "special circumstance" such that the property is valued on some date other than the date of the divorce, but "it does not follow that a circuit court's heightened deference to an arbitral award requires, as a matter of law, that the closing of the arbitration record must always be the date on which the property is valued." Majority op., ¶ 63.

¶ 89. Wisconsin Stat. § 767.27(2) requires that a party update financial information "to the date of the hearing." The dispute in this case centers on what "hearing" refers to in the context of a divorce judgment that confirms an arbitration award. As the majority notes, case law establishes that normally property is to be valued on the date of divorce. Majority op., ¶ 61 & n.40. However, this rule is problematic if the parties enter into an agreement to arbitrate the division of their property. In this scenario, the "hearing" could have four possible meanings: 1) the date on which the arbitrator chooses to close the record; 2) the date on which the arbitrator renders an award; 3) the date on which the parties move for the circuit court to confirm the arbitral award in a judgment; or 4) the date on which the circuit court actually confirms the arbitral award in a judgment.

¶ 90. I agree with Justice Prosser that "[d]eference to the arbitrator requires that the arbitrator, not the court, determine when the record is closed. This is a categorical exception to § 767.27(2)." Justice Prosser's dissent, ¶ 164. In all arbitration proceedings of this nature, the arbitrator will have to pick a date upon which the parties are required to update their information. Then, the arbitrator will have to take this information—which, depending upon the nature and extent of the parties' assets, could be voluminous—and make calculations as to the proper division of the property. Given the fact that the value of most property fluctuates, particularly stocks, the value of the parties' assets will undoubtedly change between the date the arbitrator closes the arbitration record and the time the arbitrator renders an award. Where, as here, the arbitrator did not render a decision until long after the record was closed, there is little surprise that the

406

parties' assets changed in value. Further, the value of assets will undoubtedly change between the time the arbitrator closes the record and the time the circuit court confirms the award in a judgment.

¶ 91. Given the fluid nature of assets, if the valuation date is any other than the date on which the arbitrator decides to close the record, the arbitration process would be rendered meaningless. If parties are required to constantly update their financial information after the close of the arbitration record, then the arbitrator will never be able to make a definitive calculation as to property division because the parties' assets will continue to fluctuate in value after the close of the record. This never-ending cycle of updating and recalculation will likely result in the circuit court making its own independent valuation of assets in every case at the time the parties seek to have the arbitral award confirmed.

¶ 92. The majority's failure to squarely address this issue is problematic for several reasons. First, the majority concludes that the circuit court did not err in deciding to reopen the divorce judgment because the record establishes that Mr. Franke failed to make full financial disclosures to the arbitrator and the circuit court. Majority op., ¶¶ 56, 69. However, this failure to disclose—or more properly, failure to update his financial statements—stems from Mr. Franke's failure to update his assets between the close of the arbitration hearing and the entry of divorce. I fail to see how the majority can conclude that Mr. Franke can be charged with fraud or misrepresentation for failure to provide the appropriate documentation regarding his updated assets without first determining the last date upon which he was required to update this information. If Mr. Franke's obligation to update ended on October 11,

1996, the date the arbitration record was closed, then the majority's assertion that Mr. Franke failed to disclose assets is tenuous and Ms. Franke's Wis. Stat. § 806.07 motion fails because there is little indication in the record or the majority's discussion that Mr. Franke failed to disclose assets prior to the close of the arbitration record. If the majority is to allow litigants to be charged with fraud or misrepresentation for failure to update their financial statements, it should at least do them the courtesy of informing them when their obligation to update ends.

¶ 93. Second, how can the majority conclude that the circuit court properly revalued Mr. Franke's assets without first determining the appropriate date upon which those assets are to be valued? The majority *must* determine when a party's assets should be valued because the majority today allows a circuit court to independently review the parties' financial statements and modify the arbitral award before it is confirmed in a judgment. As the majority fails to provide litigants and circuit courts with a clear rule as to when the parties' assets are to be valued, the valuation date will inevitably fluctuate on a case-by-case basis, depending upon the circuit court's independent assessment of the arbitral award.

¶ 94. By failing to give guidance to parties on this issue, the majority opens the door for claims of fraud or misrepresentation in numerous divorce arbitration proceedings and destroys the finality usually accorded to the arbitration process.

¶ 95. For the reasons discussed, I respectfully dissent.

¶ 96. I am authorized to state that Justices DAVID T. PROSSER, JR. and DIANE S. SYKES join this opinion.

¶ 97. DAVID T. PROSSER, J. *(dissenting)*.

Disputes can arise in any area of our lives, in the workplace, in the neighborhood, in school, in business, and in families. Some of those disputes escalate to the point at which one side or the other looks to the court system for resolution, by starting a lawsuit.

In recent years, professionals from a variety of backgrounds have collaborated to develop processes for resolving disputes outside of the court system. These processes are known collectively as "alternative dispute resolution," or simply "ADR."

¶ 98. These words introduce the State Bar of Wisconsin's consumer pamphlet on alternative dispute resolution.[1] The Bar explains that ADR may (1) save time; (2) save legal expenses; (3) provide the parties an opportunity for greater control over the dispute resolution process; (4) allow the parties to resolve their conflict in a more creative way than might be possible if the dispute were left to a decision by a judge or jury; (5) give parties greater privacy in resolving their disputes than is afforded in a public courtroom; (6) reduce "the emotional toll" of a lawsuit; and (7) permit valued relationships among the parties to be preserved.[2]

¶ 99. Binding arbitration is one of several ADR techniques for resolving disputes, but its utility depends upon the willingness and agreement of the parties to *settle* disagreements outside the courtroom. Binding arbitration cannot be binding if the parties do

---

[1] The text of the State Bar's consumer pamphlet may be found on the Bar's website at *http://www.legalexplorer.com/ legal/legal-QA.asp?PositionPoint* (last updated Nov. 2002).

[2] *Id.*

not voluntarily give up the right to determine some or all of their dispute in court.

¶ 100. In this case, the parties agreed to binding arbitration in a written Arbitration Agreement. They agreed that the arbitrator "should have all the powers to . . . make decisions which are normally accorded to the court under the provisions of the Wisconsin Statutes." They agreed that the "arbitration award shall not be modified or re-litigated in the circuit court except as provided in Secs. 788.10 and 788.12 [sic], or as required by Rule 802.12(3) . . . ." They further agreed that the circuit court *would* have continuing jurisdiction to modify the judgment under Wis. Stat. § 767.32 for family support and child support, not property division;[3] and they agreed to *appellate* review of the award beyond the strict limitations of §§ 788.10 and 788.11.

¶ 101. This agreement is not good enough for the majority. In its sweeping assertion of judicial power to review certain binding arbitration awards and the judgments confirming them, the majority opinion eviscerates binding arbitration in actions affecting the family and jeopardizes the finality of binding arbitration in other areas of law. The opinion is thus a setback to ADR in Wisconsin. Because the majority opinion's analysis of the applicable rules and statutes is fundamentally at odds with my understanding of the law, I respectfully dissent.

---

[3] The majority suggests that the parties themselves agreed in the Arbitration Agreement to give the court continuing jurisdiction so as to permit motions to reopen the judgment on all subjects. If this novel construction were correct, it would render superfluous the Agreement's clarifying reference to Wis. Stat. §§ 767.32 and 767.325. *See* Majority op., ¶ 26 n.9.

## I

¶ 102. Chapter 788 of the Wisconsin Statutes is referred to as The Wisconsin Arbitration Act.[4] The chapter authorizes "2 or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit."[5] The agreement to submit "shall be valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract."[6]

¶ 103. The Wisconsin Arbitration Act dates from 1931.[7] Its purposes and provisions have been litigated many times. This litigation has produced settled rules governing review of arbitrators' decisions. *Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n,* 118 Wis. 2d 707, 712, 348 N.W.2d 175 (1984).

¶ 104. Arbitrators obtain their authority from the contract of the parties. *Joint School Dist. No. 10 v. Jefferson Educ. Ass'n,* 78 Wis. 2d 94, 101, 253 N.W.2d 536 (1977). Because the parties contract for arbitration, the parties get the arbitrator's award "whether that award is correct or incorrect as a matter of fact or law." *City of Madison v. Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d 576, 586, 425 N.W.2d 8 (1988) (citing *Oshkosh v. Maint. Employees Union Local 796–A,* 99 Wis. 2d 95, 103, 299 N.W.2d 210 (1980)). While a court may disagree with the award, it may not substitute its

---

[4] Wis. Stat. § 788.17.

[5] Wis. Stat. § 788.01.

[6] *Id.*

[7] Ch. 274, Laws of 1931. "The Wisconsin Arbitration Act, enacted in 1931, obviously was intended to make arbitration agreements subject to Wisconsin law specifically enforceable." *Madison v. Frank Lloyd Wright Foundation,* 20 Wis. 2d 361, 383, 122 N.W.2d 409 (1963).

judgment for the decision of the arbitrator, *Denhart v. Waukesha Brewing Co.,* 17 Wis. 2d 44, 51, 115 N.W.2d 490 (1962), because the parties contracted for the arbitrator's decision, not the court's. *Jefferson Educ. Ass'n,* 78 Wis. 2d at 116. Upon review, the function of the court is supervisory in nature. *Milwaukee Prof'l Firefighters, Local 215 v. City of Milwaukee,* 78 Wis. 2d 1, 22, 253 N.W.2d 481 (1977). It is merely to insure that the parties have received the arbitration that they bargained for. *Union Local 796–A,* 99 Wis. 2d at 106.

¶ 105. Chapter 788 establishes procedures for selecting arbitrators,[8] gathering evidence,[9] hearing cases,[10] and issuing written arbitral awards.[11] The chapter provides for the confirmation of an arbitral award in court:

> Court confirmation award, time limit. At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and *thereupon the court must grant such an order unless the award is vacated, modified or corrected under s. 788.10 or 788.11.* Notice in writing of the application shall be served upon the adverse party or the adverse party's attorney 5 days before the hearing thereof.

Wis. Stat. § 788.09 (emphasis added).

¶ 106. The pertinent language in this section is that the court *must* grant an order confirming the arbitration award "unless the award is vacated, modified or corrected" according to statute. Significantly, a

---

[8] Wis. Stat. § 788.04.

[9] Wis. Stat. §§ 788.06(2) and 788.07.

[10] Wis. Stat. § 788.06.

[11] Wis. Stat. § 788.08.

412

party to the arbitration may ask the court to vacate the award on any of four grounds, including fraud,[12] or to modify or correct the award on any of three grounds, including material miscalculation of figures.[13] If these circumstances are shown, the court is *prohibited* from confirming the award. Instead, it *must* vacate, modify, or correct the award. However, a motion to vacate, modify or correct an award *must* be served within 3 months after the award is filed or delivered.[14] Appeals from such orders or from judgments upon awards may be filed "as from an order or judgment in an action."[15]

¶ 107. Although there are statutory grounds and statutory procedures for a court to vacate or modify an arbitrator's award, the award is presumptively valid, and it will be disturbed only when its invalidity is demonstrated by clear and convincing evidence. *Nicolet,* 118 Wis. 2d at 712 (citing *Milwaukee Bd. of Sch. Directors v. Milwaukee Teachers' Educ. Ass'n,* 93 Wis. 2d 415, 422, 287 N.W.2d 131 (1980)); *Dane County v. Dane County Union Local 65,* 210 Wis. 2d 267, 275, 565 N.W.2d 540 (Ct. App. 1997). Courts have adopted a "hands off" approach to arbitration awards, *Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d at 587 (citing *WERC v. Teamsters Local No. 563,* 75 Wis. 2d 602, 611, 250 N.W.2d 696 (1977)), because there is a strong public policy favoring arbitration as a method for settling disputes. *Milwaukee Prof'l Firefighters,* 78 Wis. 2d at 21.

¶ 108. Against this background, it is "elementary" that res judicata (claim preclusion) and collateral estop-

---

[12] Wis. Stat. § 788.10.

[13] Wis. Stat. § 788.11.

[14] Wis. Stat. § 788.13.

[15] Wis. Stat. § 788.15.

pel (issue preclusion) are applicable to arbitration awards. *Manu-Tronics v. Effective Mgmt. Sys.,* 163 Wis. 2d 304, 311, 471 N.W.2d 263 (Ct. App. 1991) (citing *Denhart,* 21 Wis. 2d at 589; and Restatement (Second) of Judgments § 84 (1982)). These doctrines underscore the finality of binding arbitration awards except in specific enumerated circumstances. An arbitration award under the statute is "irrevocable and binding on the parties." *Stradinger v. City of Whitewater,* 89 Wis. 2d 19, 33–34, 277 N.W.2d 827 (1979). "Parties who contract for arbitration are entitled to an arbitration award without the added expense of having to relitigate the issue in court." *Lukowski v. Dankert,* 178 Wis. 2d 110, 113, 503 N.W.2d 15 (Ct. App. 1993), *aff'd* 184 Wis. 2d 142, 515 N.W.2d 883 (1994).[16]

## II

¶ 109. The majority opinion completely abandons these well-settled principles. It holds, first, that a circuit court may modify a property division arbitral award on equitable grounds *before* it has been confirmed, and, second, a circuit court may modify a property division arbitral award *after* it has been confirmed and incorporated into a judgment, in a collateral attack under Wis. Stat. § 806.07. These two propositions contradict virtually every principle of binding arbitration because they eliminate the finality of the arbitral award, permit collateral attack on the arbitral award, and breach the lawful contract of the parties by empowering the court to second-guess the arbitrator on the merits.

---

[16] "The whole purpose of arbitration is to substitute a less-expensive and less-formal method of settling differences between parties for normal court litigation." *Frank Lloyd Wright Foundation,* 20 Wis. 2d at 383.

¶ 110. The majority rationalizes its decision to establish pre-confirmation judicial discretion on the theory that binding arbitration in certain actions affecting the family is authorized by Wis. Stat. § 802.12(3)(c), not Chapter 788, and binding arbitration in family law is different from other binding arbitration. The majority sums up this view with the pronouncement that "Divorce judgments [based in part on arbitral awards] are different. A circuit court is statutorily required to perform an independent, substantive review of [the] parties' agreement before incorporating it in the divorce judgment." Majority op., ¶ 50. The majority relies on Wis. Stat. § 767.255(3)(L) to support this conclusion.

¶ 111. In my view, binding arbitration under § 802.12(3)(c) is exactly the same as binding arbitration under Chapter 788. This is substantiated by the plain language of § 802.12.

¶ 112. Wisconsin Stat. § 802.12 was created by court order in 1993. *93–13 Amendment of Rules of Civil Procedure Chapter 802–Settlement Alternatives,* 180 Wis. 2d xv (1993). The amendment "provides express statutory authority for judges to order that litigants attempt settlement through any of several defined processes." *See* Judicial Council Note, 1993, to 93–13, 180 Wis. 2d at xix.

¶ 113. Wisconsin Stat. § 802.12 defines "binding arbitration" as a dispute resolution process that meets five conditions, including a condition that the award is subject to judicial review under Wis. Stat. §§ 788.10 and 788.11.[17] It also defines "nonbinding arbitration."[18]

---

[17] Wis. Stat. § 802.12(1)(a).

[18] Wis. Stat. § 802.12(1)(h).

Both forms of arbitration are permissible settlement alternatives in actions affecting the family.[19]

¶ 114. The parties choose the type of dispute settlement process they want to use. "Subsection (2)(b) [of § 802.12] *prohibits the judge from requiring the parties to submit to binding arbitration* without their consent; this restriction preserves the right of trial by jury." *Id.* (emphasis added).

¶ 115. Then Wis. Stat. § 802.12(3)(c) provides:

> (c) If the parties agree to binding arbitration, the court shall, *subject to ss. 788.10 and 788.11,* confirm the arbitrator's award and incorporate the award into the judgment or postjudgment modification order with respect to all of the following:
>
> 1. *Property division under s. 767.255.*
>
> 2. Maintenance under s. 767.26.
>
> 3. *Attorney fees under s. 767.262.*
>
> 4. Postjudgment orders modifying maintenance under s. 767.32.

Wis. Stat. § 802.12(3)(c) (emphasis added).

¶ 116. Subsection (3)(c) is quite explicit. Subject to §§ 788.10 and 788.11, the court *shall confirm the arbitrator's award and incorporate it into the judgment.* It must also incorporate the award into a *postjudgment modification order.*

¶ 117. Subsection (3)(c) contrasts with subsections (3)(d) and (e). Paragraph (d) permits the parties to agree to binding arbitration for child custody, visitation, and child support, but paragraph (e) provides that the court "may not confirm the arbitrator's award under

---

[19] Wis. Stat. § 802.12(3)(a).

par. (d)" unless the award conforms to applicable law. The applicable law requires consideration of the "best interest of the child."[20] Hence, paragraph (e) authorizes additional judicial oversight—beyond Wis. Stat. §§ 788.10 and 788.11—to awards under paragraph (d). By contrast, paragraph (c) does not anticipate judicial oversight beyond application of §§ 788.10 and 788.11. These two sections provide the only statutory criteria for judicial review under § 802.12(3)(c), so long as the prerequisite conditions of § 802.12(1)(a) have been satisfied.[21]

¶ 118. Wisconsin Stat. § 802.12(3)(c) is absolutely clear that except for determinations under §§ 788.10 and 788.11, the court *shall* confirm the arbitrator's award and incorporate a property division under § 767.255 into the judgment. It is astounding for the

[20] *See* Wis. Stat. §§ 767.045, 767.11, 767.24, 767.245, 767.25.

[21] The judges, professors, and attorneys responsible for compiling the *Wisconsin Judicial Benchbook* have recognized this commonsense reading of § 802.12(3)(c-e), subjecting child-related matters to special judicial scrutiny not applicable to property division. The Family section of the *Benchbook* differentiates between custody and physical placement, visitation, and child support on the one hand and property division, maintenance, and attorney fees on the other. *Wisconsin Judicial Benchbook: Family,* FA 3–6 to 3–7 (2d ed. 2001). The *Benchbook* notes that the latter category is exempt from the additional judicial oversight that must accompany binding arbitral awards in child-related matters. While the *Benchbook* is not intended to stand as independent legal authority for any proposition of law, its clear recitation of Wisconsin ADR principles as understood by many of the state's eminent family law experts stands in stark contrast to the majority's discovery of "tension" between § 802.12(3)(c) and § 767.255(3)(L). Majority op., ¶ 46.

417

majority to assert that Wis. Stat. § 767.255(3)(L) is an independent source of authority for judicial review of an arbitrator's award on property division before confirmation.

¶ 119. This assertion is in direct conflict with the plain language of the statute. When the majority insists that the circuit court may conduct its own evaluation of whether a property division is inequitable as to either party before confirming the arbitral award, it is transforming binding arbitration under subsection (3)(c) into a form of nonbinding arbitration. It is saying that the parties did not really contract for an arbitrator's binding decision on property division; they contracted and paid for an arbitrator's advisory decision subject to judicial review of the merits. This is simply rewriting the statute.

## III

¶ 120. The history of Wis. Stat. § 802.12 supports the view that the Judicial Council and the supreme court intended traditional binding arbitration under § 802.12(3)(c).

¶ 121. First, the original draft of the rule petition, filed in the Supreme Court Clerk of Courts office on February 11, 1993, reads in part:

> (4)(c) If the parties agree to binding arbitration, the court *shall,* subject to ss. 788.10 and 788.11, confirm the arbitrator's decision [on enumerated issues]. . . .

> (d) If the parties agree to binding arbitration, the court *may,* subject to ss. 788.10 and 788.11, confirm the arbitrator's award [on other enumerated issues]. . . The court *may not* confirm the arbitrator's child support award . . . unless the child support is determined in the manner required under s. 767.75 or s. 767.51.

93–13 Rule Petition (Feb. 11, 1993) (emphasis added).

¶ 122. This early draft established a different role for the circuit court under paragraph (c) than under paragraph (d), with paragraph (c) affording the court no discretion to review the award on the merits. Paragraph (c) was *never* substantively revised in the rule-making process, whereas paragraph (d) was revised and paragraph (e) was added to ameliorate concerns that child custody, placement, and visitation, as well as child support, not be treated the same as adult-financial issues.

¶ 123. Second, at the October 19, 1993, public hearing on the rule petition, Attorney Barbara J. Becker, then chair of the Board of Directors of the Family Law Section of the State Bar of Wisconsin, testified that the Section strongly supported binding arbitration for adult-financial issues. She said:

> In the fall of 1992, the Family Law Section Board by an overwhelming majority voted to support the Judicial Council Alternative Dispute Resolution petition. The section requested the Judicial Council to incorporate in the petition specific reference to family law actions . . .

> The section also requested the Judicial Council to separate out the money issues relating to adults in divorce, i.e., property division, maintenance, and attorney fees, from the child related issues of custody, placement, visitation, and child support as to binding arbitration. It was the consensus of the Board . . . that binding arbitration should be available to settle divorce cases.

> The Board wanted to be sure that it was very clear in the proposed rule that the trial court shall approve binding arbitration on the adult related financial issues and that the court *may* approve binding arbitration on

419

the child related issues. This was to preserve the jurisdiction of the circuit court to protect the minor children from the possible improvidence of their parents.

. . . .

[In August 1993, the Board reconsidered its position. The vote was closer than it had been the year before.] The general consensus in the Board [after the second vote] is that binding arbitration should be allowed in family law cases. There is also a general consensus that adult financial issues should be distinguished from child related issues and that the adult related [financial] issues should be subject to binding arbitration.

Testimony of Barbara J. Becker 1–2 (Oct. 19, 1993).

¶ 124. The themes set out by Attorney Becker in her testimony were echoed repeatedly by others who communicated with the court. For instance, Attorney Joan F. Kessler wrote that "The proposed statute provides that the court *must* confirm an arbitration award involving finances, and *may* confirm an award involving custody/visitation issues, if the process has been properly invoked and followed." Letter from Joan F. Kessler to Justices of the Wisconsin Supreme Court 5 (Oct. 18, 1993).

¶ 125. Dane County Family Court Commissioner Ralph J. Guerin and three assistant family court commissioners wrote that they had "no difficulty with the submission of financial issues to binding arbitration" but thought it was "inappropriate for arbitrators to be entering binding decisions in matters relating to custody or placement." Letter from Ralph J. Guerin, et al. to Supreme Court Justices (Oct. 19, 1993).

¶ 126. Ann L. Milne, a national leader in family counseling, wrote: "I support allowing parties to voluntarily choose to arbitrate their divorce-related disputes, including financial and child-related issues. The premise behind alternative dispute resolution is to provide a full range of dispute resolution alternatives. . . . The ongoing jurisdiction of the court, *parens patriae, over all child-related matters* presumes that the court will review all stipulations and all orders to be signed by the court in light of the 'best interest of the child doctrine.'" Letter from Ann L. Milne to Justices of the Wisconsin Supreme Court (Oct. 18, 1993) (emphasis added).

¶ 127. Attorney Allan R. Koritzinsky advised the court after the hearing that "This past Saturday, the Board of Directors of the State Bar Family Law Section reaffirmed its position, unanimously requesting that the Supreme Court adopt the Rule, including the arbitration provisions for all adult financial issues *and* child support. Reasonable debate remains only on the child-related arbitration provisions, excluding child support." Letter from Allan R. Koritzinsky to Clerk of Wisconsin Supreme Court (Oct. 27, 1993).

¶ 128. The gist of these communications is that binding arbitration for adult-financial issues such as property division was expected and intended to be traditional binding arbitration.

¶ 129. Third, there was one conspicuous opponent to *any* binding arbitration for actions affecting the family. Attorney Linda S. Balisle testified at the October 19 hearing as follows:

> I speak against that part of the petition which provides binding arbitration in family law cases be-

421

cause I think it is a grave mistake to restrict this court's review of family law decisions rendered by private attorneys . . .

Currently, divorcing parties may arbitrate any or all issues in their divorce. . . . The trial court may consider the arbitrator's award in reaching its own decision, but is not bound by it.

The petition that is before this court would require the trial court to give deference to the arbitrator's award and would limit the trial court's ability to modify or vacate the award consistent with the provisions of Wis. Stat. secs. 788.10 and 788.11. Further, it would limit the Court of Appeals and the Supreme Court's review of these family law cases to the narrow issues of whether the trial court properly applied Secs. 788.10 and 788.11 in affirming or modifying an arbitrator's award.

. . . .

This court has reversed experienced trial court judges and the Court of Appeals in family law cases involving issues of maintenance and property division. A review of those cases shows that if an arbitrator had made the decision the trial courts made in those cases, this court would have been unable to reverse those decisions.

. . . .

Why should this court give greater deference to a private attorney [than] it would to a trial court or the Court of Appeals?

Testimony of Linda S. Balisle 1, 5 (Oct. 19, 1993).

¶ 130. The majority opinion makes reference to Attorney Balisle's dramatic appeal, but it fails to acknowledge that the court rejected her request to re-

move binding arbitration on family issues from the rule. The court did not revise subsection (3)(c). Rather, it adopted a rule with traditional binding arbitration for adult-financial issues in family law cases.

## IV

¶ 131. The majority attempts to overcome the plain language and history of Wis. Stat. § 802.12(3)(c) by asserting that they are subsidiary to Wis. Stat. § 767.255(3)(L). This analysis misses the mark.

¶ 132. Section 767.255(3) begins with the directive that the court "shall presume that all property not described in sub. (2)(a) is to be divided equally." The subsection then authorizes the court to alter this presumption after considering certain factors, including the length of the marriage and the age and health of the parties. One of the other enumerated factors to consider in dividing property is:

> (L) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court *except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party*. The court shall presume any such agreement to be equitable as to both parties.

Wis. Stat. § 767.255(3)(L) (emphasis added).

¶ 133. In the typical case where the court is called upon to divide property, the "written agreement made by the parties" is an agreement dividing and distributing marital assets, both tangible and intangible. The "agreement" may divide assets equally in terms of value, or it may divide them unequally. It may distribute a specific asset to a particular party. In this sort of private

423

written agreement, one spouse may have tremendous influence or leverage over the other, producing an unfair property division. In such a situation, the court is not bound by the parties' agreement.

¶ 134. The only "agreement" at issue in a binding arbitration case, however, is the "agreement to submit" property division to binding arbitration. The parties do not agree to divide the property in a certain way—they agree to submit the issue to binding arbitration. How can it be said that the "terms" of such an agreement "are inequitable as to either party"?

¶ 135. The majority relies on "public policy" derived from several sources, including Wisconsin cases that did not involve binding arbitration under Wis. Stat. § 802.12(3)(c), to conclude that marriage contracts are different from other contracts and that a "court protects the parties' and public interests by reviewing the substantive provisions of any agreement affecting the division of property." Majority op., ¶ 38. There is no disagreement with this policy in a case that does not involve binding arbitration. The issue in this case, however, is whether a court is entitled to act as a "free safety"[22] in equity when the parties, in complete con-

---

[22] In football, a "free safety" is a defensive player who has "no specific assignment at the snap of the ball." *Random House Unabridged Dictionary* 764 (2d ed. 1993). Although the free safety frequently "lines up the deepest in the secondary and defends the deep middle of the field against the pass," the player may change position unpredictably to provide double coverage against a pass receiver or blitz the passer. *See http://football.about.com/cs/football101/g/gl_freesafety.htm* (last visited January 26, 2004). In binding arbitration, the parties contract to exclude the court from acting unpredictably or providing double coverage.

formity to law, have contracted for *someone other than the court* to arbitrate a property division and bind the parties.

¶ 136. In my view, the court has no authority under Wis. Stat. § 767.255(3)(L) to second-guess the arbitrator's decision on property division. There is no need to harmonize § 767.255(3)(L) with § 802.12(3)(c) when the parties have voluntarily contracted to give the *arbitrator* responsibility to balance the equities between them. It is the *arbitrator* who considers paragraph (L).

## V

¶ 137. There is no dispute that the circuit court must vacate an arbitrator's award *before it is confirmed,* under the terms of Wis. Stat. § 788.10, when a contesting party satisfies the burden of proof. There is no dispute that the circuit court must modify or correct an arbitrator's award *before it is confirmed,* under the terms of Wis. Stat. § 788.11, when such a party shows error. There is also no dispute that a party may appeal a circuit court order or judgment on these matters "as from an order or judgment in an action," under Wis. Stat. § 788.15. But this case does not involve any of these options.

¶ 138. This case involves a motion under Wis. Stat. § 806.07 to reopen a divorce judgment after the circuit court confirmed the adult-financial components of the arbitral award and incorporated them into the judgment. The motion under § 806.07 was a collateral attack on the judgment, coming more than 11 months after the judgment was entered, and long after the time to appeal the judgment had expired.

¶ 139. Section 806.07 reads in part:

Relief from judgment or order. (1) On motion and upon such terms as are just, the court . . . *may* relieve a party . . . from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

. . . .

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

. . . .

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

¶ 140. Wisconsin courts have asserted authority under § 806.07 to modify the property divisions in judgments, *Conrad v. Conrad,* 92 Wis. 2d 407, 413–14, 284 N.W.2d 674 (1979); *Spankowski v. Spankowski,* 172 Wis. 2d 285, 290, 493 N.W.2d 737 (Ct. App. 1992); *Thorpe v. Thorpe,* 123 Wis. 2d 424, 426, 367 N.W.2d 233 (Ct. App. 1985), even though Wis. Stat. § 767.32(1), which permits revision of certain judgments, does *not* permit revision or modification of "the provisions of a judgment or order with respect to final division of property." The *Spankowski* decision stressed the family court's "discretionary authority to grant relief from the judgment." 172 Wis. 2d at 290.

¶ 141. None of the cases cited dealt with a binding arbitration award. Until today, circuit courts have not had "discretion" to review arbitration awards on an equitable basis. Logically, a circuit court should not

have more "discretion" to revise a binding arbitration award under § 806.07 than it has under § 802.12(3)(c). That is why the majority devotes such effort to establishing that binding arbitration in actions affecting the family is different from other binding arbitration—that is, it does not "bind" the court.

¶ 142. Wisconsin Stat. § 806.07 is based upon Rule 60(b) of the Federal Rules of Civil Procedure. Patricia Graczyk, *The New Wisconsin Rules of Civil Procedure, chapters 805–807,* 59 Marq. L. Rev. 671, 726 (1976). Hence, federal rules decisions interpreting Federal Rule 60(b) may be helpful in interpreting the Wisconsin rule. *See Split Rock v. Lumber Liquidators,* 2002 WI 66, ¶ 14, 253 Wis. 2d 238, 646 N.W.2d 19. Traditionally, federal courts interpret Rule 60(b) in tandem with Title 9 of the United States Code (the Federal Arbitration Act).

¶ 143. The principles embedded in the federal cases are clear. "Judicial review of arbitration awards is narrow because arbitration is intended to be the final resolution of disputes." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731,* 990 F.2d 957, 960 (7th Cir. 1993). "Where parties have selected arbitration as a means of dispute resolution, they presumably have done so in recognition of the speed and inexpensiveness of the arbitral process; federal courts ill serve these aims . . . by engaging in any more rigorous review than is necessary to ensure compliance with statutory standards." *Davis v. Chevy Chase Fin. Ltd.,* 667 F.2d 160, 164–65 (D.C. Cir. 1981). The Federal Arbitration Act "does not, it must be stressed, confer on courts a general equitable power to substitute a judicial resolution of a dispute for an arbitral one; rather . . . '[i]t is the arbitrator's construction [of a contract] which was bargained for,' and not that of the courts." *Id.* at 165

(quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)).

¶ 144. Federal courts have consistently applied these principles. For example, in *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d 1234 (D.C. Cir. 1971), the district court granted summary judgment to sustain an arbitrator's award. The Guild then filed a motion to reopen the judgment under Federal Rule 60(b) on grounds of newly available evidence. The court of appeals said:

> [I]t was the Guild's bargain with the Post to have disputes over the discharge of employees settled by arbitration, with all of its well known advantages and drawbacks. To give appellant a rematch before the arbitrator, merely because a witness who refused to enter the original contest has now decided to participate, would be not only to give the Guild more than the benefit of its bargain in this case, but would undercut the finality and therefore the entire usefulness of arbitration as an expeditious and generally fair method of settling disputes. As District Judge Aubrey Robinson put it in this case: SU32Unless parties are bound by the records made before the arbitrators, the piecemeal or staggered submission of evidence would be likely to erode the effectiveness of arbitration as a speedy and efficient forum for resolving labor disputes.
>
> . . . .
>
> *These considerations demonstrate substantial cause for not applying Rule 60(b) remedies to final arbitration awards.* Of course, neither Rule 60(b) per se nor, for that matter, any other of the Federal Rules of Civil Procedure was ever designed to apply to proceedings in other than the United States District Courts.
>
> . . . .

428

In sum, we think that neither Rule 60(b) nor any judicially constructed parallel thereto was meant to be applied to final arbitration awards, and that the District Court was correct in denying appellant's motion.

*Id.* at 1238–39 (emphasis added).[23]

¶ 145. The majority seeks to distinguish cases following the seminal *Washington Post* decision. It points to three cases in which federal courts have said that Rule 60(b) may be used "to open a judgment that confirms an arbitration award." Majority op., ¶ 27 n.10. These three cases require individual analysis.

¶ 146. In 1983 the Seventh Circuit reversed a district court decision reopening an arbitration award under Rule 60(b). *Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673 (7th Cir. 1983). Writing for the court, Judge Richard Posner declared:

> If Leatherby had wanted its dispute with Merit resolved by an Article III judge . . . it would not have inserted an arbitration clause in the contract, or having

---

[23] In *Bledsoe v. Dalkon Shield Claimants Trust (In re A.H. Robins Company),* 112 F.3d 160 (4th Cir. 1997), one of the parties attempted to use Rule 60(b) to challenge the arbitrator's award directly. The court said:

> Neither the Agreement nor the ADR Rules contain a provision permitting either party to seek a new hearing after the referee issues a decision. The absence of any provision providing for post-decision review is not unintentional. We believe that it constitutes a deliberate omission, because any rule permitting such immediate review would contravene the very goal of the ADR process—the efficient, fair, and final resolution of claims against the Trust. Consequently, we hold that the district court did not abuse its discretion in finding that Rule 60(b) relief from this particular ADR procedure was not available to those claimants who elected to have their claims resolved in ADR.

*Id.* at 163.

done so move for arbitration against Merit's wishes. Leatherby wanted something different from judicial dispute resolution. It wanted dispute resolution by experts in the insurance industry, who were bound to have greater knowledge of the parties, based on previous professional experience, than an Article III judge, or a jury. The parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen.

*Id.* at 679.

¶ 147. Judge Posner explained that Rule 60(b) places a high value on the social interest in finality of litigation. *Id.* at 682. Then he went on: "To make out a case for relief from judgment under Rule 60(b)(6) Leatherby had to show not only that an arbitrator had violated the ethical and legal standards for arbitrators but that the violation created a substantial danger of an unjust result." *Id.* at 682–83.

¶ 148. This latter statement implied that Rule 60(b) could be used to reopen a judgment based on an arbitrator's award. However, the court cited no authority for its statement and did not apply it to the facts. As noted, the district court's grant of the motion was reversed.

¶ 149. Leatherby's Rule 60(b)(6) motion to reopen the judgment was filed 18 months after the award had been issued by the arbitrators. Consequently, the motion was at odds with the language in 9 U.S.C. § 12, that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party . . . within three months after the award is filed or delivered."

¶ 150. The purpose of Title 9 was to make arbitration agreements as *enforceable* as other contracts.

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1113 (3rd Cir. 1993); *Supak & Sons Mfg. Co. v. Pervel Indus., Inc.,* 593 F.2d 135, 137 (4th Cir. 1979). Permitting Rule 60(b) to be used to reopen a judgment incorporating an arbitration award is really nothing more than permitting the court to reopen the arbitration award itself. This is highly problematic, because literal application of Rule 60(b) would permit a party to move to reopen the judgment for, say, misrepresentation, up to four times longer *after* judgment is entered than *before* judgment is entered.[24] This makes no sense because it undermines the purpose of alternative dispute resolution. It severs the arteries of binding arbitration under Title 9 by disregarding the time limits in Title 9. Because the *Leatherby* court provided no authority or rationale for its observation and did not apply it, the observation should be regarded as dictum.

¶ 151. In a second case, *Baltia Air Lines, Inc. v. Transaction Management, Inc.,* 98 F.3d 640 (D.C. Cir. 1996), the court stated that "Rule 60(b) is an appropriate vehicle by which to challenge a judgment confirming an arbitration award." *Id.* at 642. Here, too, the court cited no authority for its statement and did not apply it because the motion under Rule 60(b), which suggested newly discovered evidence and fraud, was filed more than a year after the judgment on the award was entered. Hence, the court relied upon the time limit in the rule as the basis for denying relief.

---

[24] Federal Rule 60(b) requires that a motion to relieve a *judgment* "shall be made within a reasonable time, and for reasons (1) [mistake, inadvertence, surprise, or excusable neglect], (2) [newly discovered evidence], and (3) [fraud, misrepresentation, or other misconduct of an adverse party] not more than one year after the judgment . . . was entered or taken."

¶ 152. In the third case, *Clarendon National Insurance Company v. TIG Reinsurance Company,* 183 F.R.D. 112 (S.D.N.Y. 1998), Federal District Judge Robert Sweet did apply Rule 60(b) to reopen a judgment, and he did pen language that substantiates the majority's position. He noted that:

> Clarendon does not suggest the use of Rule 60(b) to modify the arbitration award itself. It is well-established that Rule 60(b) does not apply to such awards. *See Cook Chocolate Co. v. Salomon, Inc.,* 748 F. Supp. 122, 125 (S.D.N.Y. 1990) (holding that Rule 60(b) cannot be utilized to vacate an arbitration award), *aff'd* 932 F.2d 955 (2nd Cir. 1991). Rather, Clarendon invokes the Rule to modify the Judgment entered by this Court.

*Clarendon,* 183 F.R.D. at 117.

¶ 153. However, the *Clarendon* case presented unusual facts: Clarendon moved, under authorized Title 9 procedures, to vacate the arbitration award issued in the arbitration proceeding between it and TIG Reinsurance Company. TIG cross-moved to confirm the award in part and to remand one issue for further determination by the arbitrators. The district court granted the cross-motion, confirming the award as to certain issues and remanding other issues to the arbitrators. *See Clarendon National Insurance Company v. TIG Reinsurance Company,* 990 F. Supp. 304 (S.D.N.Y. 1998). The court subsequently entered judgment on the parts of the award it had confirmed.

¶ 154. On remand, the arbitrators themselves reopened issues that they had previously decided, to correct an arithmetic error in their original award. Then they issued a revised award, including new issues, which Clarendon sought to confirm. At the same time, Clarendon moved under Rule 60(b) for relief from the previous judgment to correct the acknowledged error.

¶ 155. The court described the case as presenting "extraordinary circumstances." *Clarendon,* 183 F.R.D. at 118. The case was not closed because the court had remanded certain issues to the arbitrators, and the arbitrators issued a revised award in which they explicitly acknowledged a mathematical error. The principal issue in the case the second time it went to court was whether the arbitrators *could* correct their mathematical error. The court ruled that they could, and it then confirmed the modified award. Having done that, the court modified its previous, inconsistent judgment.

¶ 156. The *Clarendon* case is thus very different factually from the case at hand. In the present case, the court reopened a judgment without remanding any issues to the arbitrator. In a collateral proceeding, it took new evidence and revised the arbitration award based, in part, on evidence not available to the arbitrator at the close of the arbitration proceeding. The *Franke* case cannot be compared to *Clarendon* because it sweeps past *Clarendon* and every other state and federal case that has been brought to the attention of the court.

## VI

¶ 157. The majority's use of § 806.07 to reopen the merits of a binding arbitration award is ominous and raises questions about *all* binding arbitration awards. After all, Ms. Franke relies on Wis. Stat. § 788.14(3),[25] which unambiguously applies to *all* arbitration under Chapter 788, as her basis for invoking § 806.07. The majority opinion fails to repudiate this

[25] Wis. Stat. § 788.14(3) reads as follows:

The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of

premise. Indeed, it cites the *Clarendon* case in which the federal court regrettably relied on Section 13 of the Federal Arbitration Act, which parallels § 788.14(3),[26] to support the view that the basic arbitration statute permits courts to reopen *judgments* confirming arbitration awards. The majority attempts to downplay the potential scope of its ruling by assuring us that it determines only the applicability of § 806.07 to family law arbitration cases. However, once the § 806.07 door is opened, it will be hard to close. The majority's application of § 806.07 to a judgment incorporating a binding arbitration award implies that all subsections of § 806.07 may be utilized to attack arbitral awards incorporated into judgments. This is bound to spawn future litigation and undermine the finality of arbitration awards.

¶ 158. As a general rule, § 806.07(1) does not apply to judgments based on arbitration awards. Any other conclusion is inconceivable because it would authorize judicial tampering with all binding arbitration awards after judgment, thereby making them nonbinding, and trivialize the protections of arbitration awards found elsewhere in the statute. As a last resort, a party

---

law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

[26] Section 13 of Title 9 provides in part: "The judgment so entered shall have the same force and effect, in all respects, as, *and be subject to all the provisions of law relating to, a judgment in an action;* and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C.A. § 13 (emphasis added). The *Clarendon* case appears to be the only case directly linking 9 U.S.C. § 13 to Federal Rule 60(b).

may file an independent action under Wis. Stat. § 806.07(2) to relieve it from a judgment based upon a direct fraud on the court.

## VII

¶ 159. The majority opinion subverts the principles of binding arbitration in at least two additional ways. First, the majority concludes that the closing of the arbitration record does not create a categorical exception to Wis. Stat. § 767.27(2).

¶ 160. Second, the majority concludes that an appellate court should review a circuit court's decision to grant relief from an arbitration award under Wis. Stat. § 806.07 *using an erroneous exercise of discretion standard.*

¶ 161. The implications of these determinations will be discussed in turn. Wisconsin Stat. § 767.27(1) provides that in any action affecting the family "the court shall require each party to furnish, on such standard forms as the court may require, full disclosure of all assets owned in full or in part by either party separately or by the parties jointly." Wisconsin Stat. § 767.27(2) then provides:

> Disclosure forms required under this section shall be filed within 90 days after the service of summons or the filing of a joint petition or at such other time as ordered by the court or circuit court commissioner. *Information contained on such forms shall be updated on the record to the date of hearing.*

Wis. Stat. § 767.27(2) (emphasis added).

¶ 162. These provisions apply indisputably when the responsibility for making decisions on such issues as property division and maintenance is assigned to the

court. In the normal situation, the court should set the rules for securing information and the court will value and divide the property as of the date of the divorce.

¶ 163. Of course, binding arbitration under Wis. Stat. § 802.12(3)(c) is not the normal situation. The parties have contracted for a determination by the arbitrator, not the court, and the arbitrator should set the ground rules for securing evidence, including the deadline for submitting evidence.

¶ 164. The majority proceeds as though there were no agreement for binding arbitration—as though information not available and circumstances not present at the time the arbitration record is closed may be used by a court to reevaluate the award on property division in a judicial decision on the merits. By outlining the possibility that issues will be determined on information not available to the arbitrator, the majority effectively erases any deference to the arbitrator and invites circuit court intervention on equitable grounds. Deference to the arbitrator requires that the arbitrator, not the court, determine when the record is closed. This is a categorical exception to § 767.27(2).

¶ 165. As for the standard of review, an appellate court is inclined to show deference to a discretionary decision by the circuit court. However, in a case involving binding arbitration, an appellate court ought to be showing deference to the arbitrator's award, because it is presumed to be correct.

¶ 166. In *Lane v. Williams*, 2000 WI App 263, ¶ 6, 240 Wis. 2d 255, 621 N.W.2d 922, the court stated:

> We review an arbitration award without deference to the trial court. Our function is to insure that the parties received the arbitration they bargained for. *See City of Madison v. Local 311, International Ass'n of*

*Firefighters,* 133 Wis. 2d 186, 190, 394 N.W.2d 766 (Ct. App. 1986). The circuit court may modify an award only on the grounds specified by statute. *See McKenzie v. Warmka,* 81 Wis. 2d 591, 603, 260 N.W.2d 752 (1978).

¶ 167. The majority seeks to get around this black letter law by shifting the focus from the arbitration award to the "discretionary" decision to reopen the judgment. No doubt, a court does exercise discretion when it reopens a judgment under Wis. Stat. § 806.07. But to exercise that discretion here—that is, to reopen an arbitration award by reopening the judgment—is incompatible with binding arbitration and should make it obvious why § 806.07 may not be used in a case like this.[27] Once again, to reach its conclusion, the majority redefines binding arbitration.

## VIII

¶ 168. Thirteen years ago this court decided that the parties to a divorce may, under certain circumstances, stipulate that their property division and agreed-upon maintenance payments are permanent and may not be modified in the future by a court. *Nichols v. Nichols,* 162 Wis. 2d 96, 469 N.W.2d 619 (1991). In *Nichols,* a former spouse moved for an increase in maintenance nine years after the divorce. The circuit court denied the motion on grounds that the divorce judgment had incorporated the parties' stipulation that "Said property division and maintenance payments of petitioner, Mitzi Nichols, to be considered as

---

[27] In *McDaniels v. Brown,* 740 A.2d 551, 555 (D.C. 1999), the District of Columbia court said: "A judgment entered upon an arbitration award may not be made the subject of a motion under Rule 59 or Rule 60(b) of the Superior Court's Rules of Civil Procedure, *see, e.g., Siddig v. Ostheimer,* 572 A.2d 447, 450 (D.C. 1990)."

permanent and in lieu of any further or additional maintenance payments, except said maintenance payments shall terminate upon remarriage of [Mitzi Nichols]." *Id.* at 101.

¶ 169. The court of appeals reversed, citing Wis. Stat. §§ 767.32(1) and 767.08(2)(b) and reasoning that the provision of the judgment that maintenance is not subject to modification violated public policy. *Id.* at 102–03. This court reversed the court of appeals, saying:

> As a general rule, maintenance is always subject to modification upon a showing of the requisite change in circumstances. However, in [*Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984)], we recognized an exception to the general rule that maintenance is always subject to modification when we held that a party is estopped from seeking modification of the terms of a stipulation incorporated into a divorce judgment . . .

*Id.* at 103–04 (citations omitted). We held that the party to a divorce judgment is estopped from seeking an increase in maintenance if four conditions are met:

> [F]irst, the parties freely and knowingly stipulated to fixed, permanent, and nonmodifiable maintenance payments and said stipulation was incorporated into the divorce judgment; second, the stipulation was part of a comprehensive settlement of all property and maintenance issues which was approved by the circuit court; third, the overall settlement, at the time it was incorporated into the divorce judgment, was fair, equitable, not illegal, and not against public policy; and, fourth, the party seeking release from the terms of the divorce judgment is seeking release on the grounds that the court did not have the power to enter the judgment without the parties' agreement.

438

*Id.* at 100–101. One of the reasons the court gave for its decision was that:

> [A]llowing the decision of the court of appeals to stand will discourage the settlement of divorce cases. The advantage of agreements providing that maintenance is not subject to modification is certainty and finality. If nonmodifiable maintenance is not really nonmodifiable, there will be no motivation for a payor spouse to enter into stipulations such as the agreements in *Rintelman, Ross,*[28] and the one in the case at bar. Therefore, the decision of the court of appeals will discourage settlements, contrary to the public policy of this state.

*Id.* at 115.

¶ 170. The court's decision was not unanimous. The dissent argued that "the public policy of this state, as reflected in the divorce statutes over the years, is to allow the courts to modify maintenance to protect both spouses should circumstances change after the judgment is entered." *Id.* at 117 (Abrahamson, J., dissenting).

¶ 171. Although the present case deals with property division, not maintenance, the views of the dissent in *Nichols* are now enshrined in the majority opinion. The result is to obliterate *binding* arbitration in actions affecting the family. To paraphrase the *Nichols* majority, if binding arbitration is not really binding, there will be no motivation for the parties to agree to it, contrary to the public policy of this state.

¶ 172. It should be evident that time-tested principles of binding arbitration have been overwhelmed in this case by a belief that Martin T. Franke deceived the arbitrator and defrauded his wife.

---

[28] *Ross v. Ross,* 149 Wis. 2d 713, 439 N.W.2d 639 (Ct. App. 1989).

¶ 173. But did he?

¶ 174. The majority's conspicuous failure to discuss the facts of this case is a telling acknowledgement that the record may not support the misconduct the majority implies.[29]

¶ 175. I am authorized to state that Justices JON P. WILCOX and DIANE S. SYKES join this opinion.

---

[29] In Judge Sweet's first opinion in the *Clarendon* case, he wrote:

> Courts have held that, "[o]nly the most egregious error which adversely affects the rights of a party" constitutes misconduct and "[e]rroneous exclusion of evidence does not in itself provide a basis for vacating an award absent substantial harm to the moving party." *In Matter of Consolidated Arbitrations Between A.S. Seateam v. Texaco Panama, Inc.,* No. 97 Civ. 0214, 1997 WL 256949, *7 (S.D.N.Y. May 16, 1997). Further, such misconduct "must amount to a denial of fundamental fairness of the arbitration proceeding." *Areca, Inc. v. Oppenheimer & Co.,* 960 F. Supp. 52, 54–55 (S.D.N.Y. 1997).

*Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.,* 990 F. Supp. 304, 310 (S.D.N.Y. 1998).